## Harvey *versus* Vandegrift.

1. The rule which allows extrinsic evidence to explain the extent of the subject sold has no application when a subject-matter exists which satisfies the terms of the instrument of conveyance.

2. A. conveyed a tract of land to B., the deed therefor containing no reference to any servitude thereon. A. conveyed an adjoining tract to C., the deed containing a grant of a fishery " to the distance of twenty-eight perches, down the river from the place of beginning," which covered all of B.'s water front. In a conveyance from C. to D. there was a grant of the same right of fishery " as it has been heretofore conducted." B. erected a wharf on the river front of his land, and D., alleging that his fishery was injured thereby, brought an action against B. for damages. *Held*, that the language " as it has heretofore been conducted," referred only to the *manner* in which the fishery was conducted and had no necessary relation to the extent thereof. *Held further*, that there was no such ambiguity in the grant as required extrinsic evidence of its extent; that it was the duty of the court to declare the proper construction of the grant as a matter of law, and that the grant of the fishery to plaintiff was not notice, either actual or constructive, to the defendant, that the fishery extended up to, and beyond his pier.

3. The court below admitted evidence to show the extent of the fishery. The admission of this evidence was not assigned for error, but the defendant asked the court to construe the language of the deed containing the grant and to define its extent as a matter of law. *Held*, that this request was equivalent to a motion to strike out the parol evidence which had been previously admitted, and it was error to refuse to so charge.

March 7th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Bucks county:* Of January Term 1875, No. 30.

Case by John Vandegrift against Josiah L. Harvey and Richard Eyre, to recover damages for injury to plaintiff's fishery, which it was alleged was caused by the erection of a wharf by defendants.

The *narr.* averred that the plaintiff was, on the first day of April 1870, and ever since had been possessed of and in a certain messuage and three acres and a quarter of land, with the appurtenances, lying and being "in the township of Bensalem, in the county of Bucks, and state of Pennsylvania, adjoining lands of Josiah L. Harvey and others, and fronting on the river Delaware, together with a fishery in the said river Delaware, on and adjoining said land and on and adjoining other lands above and below the land of said plaintiff, extending a long distance, to wit: thirty perches up from said land along the shore of said river, and thirty perches down said river from land of said plaintiff along the shore of the said river Delaware." It then averred the exclusive right of the plaintiff to fish and draw out his seines and nets on the shore within the distance of thirty perches above and below his said land.

The facts were these :

[Harvey v. Vandegrift.]

In 1792, the executors of John Kidd granted and conveyed to John McElroy, a tract of land situate in Bensalem township, Bucks county, having a front on the river Delaware, and bounded on one side by the Dunk's Ferry road, containing two hundred and thirty-eight acres and ninety-six perches, "together with the right and privilege of fishing and landing ferry-boats on the bank of said river, to the distance of twenty-eight perches down the same, below the place of beginning on the land sold and conveyed to said Corvasier." Corvasier owned the land next to and immediately below the Dunk's Ferry road.

On the 18th of March 1835, the heirs of John McElroy conveyed these premises, "together with the right and privilege of fishing and landing the ferry-boats on the bank of the said river, to the distance of twenty-eight perches down the same, below the place of beginning," to John Paxson and Levi D. Vandegrift.

On the 26th day of March 1838, John Paxson and Levi D. Vandegrift granted and conveyed to Charles Tyson a tract of fourteen acres fronting on the river Delaware, known by the name of Dunk's Ferry, "together with all our right and privilege of the fishery as it has heretofore been conducted, and landing the ferry-boats on the bank of the said river, to the distance of twenty-eight perches down the same, below the place of beginning. It being part of a tract of land conveyed to the said John Paxson and Levi D. Vandegrift, * * * by indenture dated the 18th day of March 1835."

This fourteen-acre tract immediately adjoined the Dunk's Ferry road. On the 21st of October 1841, Charles Tyson conveyed ten and three-fourths of this fourteen-acre tract to Amos Wilson. The tract conveyed to him had a front on the river at high water of about five hundred and fifty feet, but only extended fifteen feet below the high-water mark. On the same day, Tyson conveyed three and one-fourth acres, the rest of the fourteen-acre tract, to John Vandegrift, the plaintiff below. This tract of three and one-fourth acres consisted of a small piece of land along the Dunk's Ferry road and the flats in front of the tract granted to Wilson on the same day, between low-water mark and Wilson's line, fifteen feet below high-water mark.

This deed contained the following language in regard to the fishery and ferry right: "Together with all the right of the said Charles Tyson in the fishery and the privileges thereto belonging, as it has heretofore been conducted, also the privilege of landing the ferry-boats on the bank of the said river to the distance of twenty-eight perches down the same, below the place of beginning, together, also, with the ferry," excepting the right to land anything on the bank of the said John Vandegrift, and a right of way to the Dunk's Ferry road, granted the same day to Amos Wilson.

The ten and three-quarter acre tract is now owned, and was

[Harvey *v.* Vandegrift.]

owned at and before the time of the injury alleged in the *narr.*, by the defendant below, Josiah L. Harvey, who derives his title through several mesne conveyances from Amos Wilson.

The defendant below also owned a tract of seven acres immediately adjoining the ten and three-quarter acre tract, also fronting on the river Delaware. These seven acres were also a part of the original McElroy tract, and were sold by Paxson and Vandegrift in 1846, and became the property of the defendant Harvey, in 1868. The title deeds to this tract contained no reference to any right of fishing in front of the said tract to which it was subject.

In the early part of 1870 the defendant Harvey built in front of this seven-acre tract a wharf extending out into the river beyond the low-water mark.

The plaintiff then brought the present action for damages caused by the wharf obstructing his right of fishing.

Evidence was given by plaintiff, under objection, that the head of the fishery was the upper line of the McElroy tract, and extended beyond the front occupied by defendant's wharf. It was shown also that the wharf interfered with the fishery and was a serious obstruction to drawing the nets.

The defendants submitted, inter alia, the following points, to which are appended the answers of the court:

1. The legal construction of the grant of the fishery to the plaintiff contained in the deed of Paxson and Vandegrift to Tyson is, that such grant extended along the front of the fourteen-acre lot, and twenty-eight perches below the lower line on the land of Corvasier, and no further. There being a claim to an actual grant it must be reasonably certain ; there is no room to suppose that the grantor parted with a privilege not appurtenant to the land conveyed.

Ans. "We cannot instruct you as requested in this point. The grant in the deed is of 'our right and privilege of the fishery as it has heretofore been conducted,' and it is granted as an appurtenance of the land conveyed. Parol evidence has properly been received to show how the fishery had previously been conducted, and it is for your consideration in determining the extent of the previous use of the defendant's land for the purposes of the fishery."

5. The grant to Vandegrift, and those under whom he claims title, is not notice sufficient to affect a subsequent purchaser, as Harvey was, of a title of other lands of Paxson and Vandegrift, and unless the jury find that he had notice at the time of taking title of a fishery on this land, such as to put him on inquiry, and there was no description filed in the prothonotary's office, of a fishing place on the same, he took clear of such fishery.

Ans. "We cannot so charge. The deeds and user were sufficient notice."

In the general charge the court, Watson, P. J., inter alia, said:

[Harvey v. Vandegrift.]

"The extent of the fishery is no further defined by the deeds than as 'heretofore conducted.' It is therefore, necessary to resort to parol evidence to show how and to what extent it had been theretofore conducted—in other words to identify the subject-matter of the grant, just as we find it necessary to do in every other case by parol testimony. Be the description of the premises never so particular, if it is not of itself sufficient to identify them parol testimony must be resorted to in order to show where and what they are. This is the purpose of such testimony here. It is for you to determine, from its consideration, what was the extent of the fishing right conveyed by these deeds and vested in the plaintiff."

Verdict for plaintiff. The defendants took this writ, and assigned for error, inter alia, the answers to the above points, and the submission to the jury in the foregoing portion of the charge of the question of the extent of the fishery.

*Harman Yerkes* and *George W. Biddle*, for plaintiffs in error. —The extent of the plaintiff's right of fishery is defined by the deed from Paxson and Vandegrift to Tyson, in 1838, and it was the duty of the court to say what this was, and not to leave it to the jury to find from parol evidence.

The rule which allows extrinsic evidence to explain "the extent of the subject sold," has no application "when a subject-matter exists," which satisfies the terms of the instrument of conveyance; Doe d. Chichester v. Oxenden, 3 Taunt. 147; Starkie on Evidence 692, 693.

Was it intended by the insertion of the words "the fishery as it has heretofore been conducted," to enlarge the grant, and give to the grantee a greater "right of fishing" than had been conveyed to the grantors as appurtenant to the lands granted to them?

It is contended here that there was no such intention; that the words "as it has heretofore been conducted," refer not to the extent of the fishery, which had already in the previous deeds been defined, but to the mode of exercising this right. They were intended to limit the generality of the language in the prior grant by confining the right to that particular manner in which the fishery had "theretofore been conducted."

*G. & H. Lear, George Ross* and *L. L. James*, for defendant in error.—In the deed of Paxson and Vandegrift to Tyson, no attempt is made whatever to describe the fishery, and in fact no reference to it occurs at all, excepting toward the end of the habendum the word fishery is once used. In the deed of Tyson and wife to Vandegrift, in 1841, the conveyance sets forth, inter alia, "together with all the right of the said Charles Tyson in the fishery and the privilege thereto belonging, as it has heretofore been con-

[Harvey *v.* Vandegrift.]

ducted." Certainly nothing appears in this clause by which the extent of the fishery referred to could be discovered from an examination of the deed itself, unless it is that the intention of the grantor was to convey a right of fishery to be enjoyed to the extent that he and those under whom he claimed have previously enjoyed it, which necessarily involved an inquiry of fact, to be proved by the testimony of those living witnesses who had conducted the fishery prior to the date of the grant.

It was proper, therefore, to show by extrinsic evidence what was intended by the grant: Collins et al. *v.* Rush, 7 S. & R. 147; Scott *v.* Sheakly, 3 Watts 50; Hoffman et al. *v.* Danner et al., 2 Harris 25; Tiley *v.* Moyers, 7 Wright 404; Lycoming Ins. Co. *v.* Sailer, 17 P. F. Smith 108; Broom's Maxims 300

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1879.

The plaintiff below is the owner of a tract of three and a quarter acres of land on the river Delaware, in Bucks county, a few miles below Bristol. He is also the owner of certain rights of fishery appurtenant to said land. The defendant owns the tract adjoining on the east, and in the year 1870 built a wharf in front of his land, extending out into the river over one hundred feet below low-water mark. The plaintiff contends that this wharf obstructs his right of fishing, and brought this action in the court below to recover damages therefor.

No servitude upon the land of the defendant appears in his line of title. No reference to it is found in his own deed or in the mesne conveyances from Amos Wilson. By ascending the stream of title, however, until he reached John Paxson and Levi D. Vandegrift, under whom both parties derive title, he would have ascertained that when they conveyed to Charles Tyson the fourteen-acre tract known as "Dunk's Ferry," they included the fishery in controversy, by the following description: "Together with all our right and privilege of the fishery as it has heretofore been conducted, and landing the ferry-boats on the bank of the said river to the distance of twenty-eight perches down the same below the place of beginning." This fourteen-acre tract had a river front of about five hundred and fifty feet, but only extended fifteen feet below high-water mark. Tyson conveyed three and a quarter acres of said tract to John Vandegrift, including the entire front between low-water mark and fifteen feet below high-water mark. The deed from Tyson to Vandegrift contained the following in reference to the fishery: "Together with all the right of the said Charles Tyson in the fishery and the privileges thereto belonging, as it has heretofore been conducted, also the privilege of landing the ferry-boats on the bank of the said river to the distance of twenty-eight perches down the same, below the place of beginning," &c.

[Harvey v. Vandegrift.]

In the prior conveyance by the heirs of McElroy to Paxson and Vandegrift of the large tract of which the premises of both the plaintiff and the defendant form a part, the fishery is described as follows: " Together with the right and privilege of fishing and landing the ferry-boats on the bank of the said river to the distance of twenty-eight perches below the place of beginning." The twenty-eight perches below was land formerly belonging to Corvasier, and was so referred to in the grant of the fishery contained in the deed of these premises from John Kidd to John McElroy.

Assuming that the defendant was affected with notice of the grant of the fishery as set forth above, we are led to consider the extent of said grant.  Just here the difficulty in the case arises.  There is nothing in the language employed that in terms imposes any servitude upon the land of the defendant.  The court below admitted parol evidence to show the extent of the fishery.  Against the objection of the defendant witnesses were permitted to testify that the shore in front of defendant's land, and for a considerable distance beyond the pier, had been used by the plaintiff and his predecessors in the fishery, for hauling the seines and other purposes connected with said fishery.  The admission of this evidence was not assigned for error, and whatever our view of its competency may be, the court below cannot be convicted of error in admitting it.  But by the defendant's first point the learned judge was called upon to construe the language of the deed containing the grant of the fishery, and to define the extent thereof as a question of law.  This he declined to do, and instructed the jury that " the grant in the deed is of ' our right and privilege of the fishery as it has heretofore been conducted,' and it is granted as an appurtenance to the land conveyed.  Parol evidence has properly been received to show how the fishery had previously been conducted, and it is for your consideration in determining the extent of the previous use of the defendant's land for the purposes of the fishery."  The effect of this point was to withdraw from the consideration of the jury the parol evidence which had been previously admitted in regard to the extent of the fishery.  It was the equivalent of a motion to strike it out.  The correctness of the answer of the court must be measured, therefore, by the competency of the evidence referred to.

It is undoubtedly true that where the subject-matter of a grant is insufficiently described in a deed, parol evidence may be given to show precisely what was intended to be conveyed.  It is said in Stark. on Evidence 692, that " in general, when there is any doubt as to the extent of the subject-matter devised by will, or demised or sold, it is a matter of extrinsic evidence to show what is included under the description as parcel of it."  The same principle is ruled in Scott v. Sheakly, 3 Watts 50, and Hoffman v. Dannor, 2 Harris 25.  And in such case it is well decided that the question of the extent of the grant must go to the jury.  But was there

[*Harvey v. Vandegrift.*]

any such ambiguity in the case in hand as to bring it within the rule above stated? The authorities are equally clear that the rule which allows extrinsic evidence to explain the extent of the subject sold, has no application when a subject-matter exists which satisfies the terms of the instrument of conveyance: Stark. on Ev. 693; Chichester *v.* Oxenden, 3 Taunt. 147. The right of fishing granted by the deed to Paxson and Vandegrift, was the right of fishing twenty-eight perches down the river below the place of beginning. That is to say, in addition to the right of fishing opposite and upon their own land, they were granted the privilege of fishing twenty-eight perches further down the river upon the land formerly of Corvasier, which was thus made servient to the fishery. There is no ambiguity here. The extent of the grant is clearly defined, and no extrinsic evidence is needed, or would be admissible to extend it. The grant of the fishery contained in the mesne conveyances from Paxson and Vandegrift to the plaintiff, vary the phraseology somewhat, but the substance remains the same. It carried the right to the fishery *as it has heretofore been conducted*, and to use the shore for twenty-eight perches below the place of beginning for the purposes of fishing and landing the ferry-boat. The words I have italicised were not in the original grant, and much stress has been laid upon them as bearing upon the extent of the fishery, and as opening the door to the admission of the extrinsic evidence referred to. We are to construe these words according to their ordinary and known signification. They are not terms of art. In what light would the defendant, standing upon a fee-simple title, with no word therein to indicate that his grantor had fastened a servitude upon the land he had thus acquired, yet affected with notice of the grant of the fishery, regard, or be bound to regard the language referred to? The words "as heretofore conducted," have no necessary relation to the extent of the fishery. Among the many definitions of the verb "conduct," given by Worcester, the only one that has any possible application to this case is "to carry on; to manage; to regulate." Hence, if the defendant had found this grant in his investigation of his title, he would have ascertained, 1st. That the plaintiff had the right of fishing on his own front of about six hundred and seventy feet at low-water mark, and for the distance of twenty-eight perches below on land of Corvasier; and 2d. That the fishery was to conducted, *i. e.*, carried on, managed, or regulated as heretofore. What was there in the language of the grant, or in what was omitted therefrom, to warn the defendant that it fastened a servitude upon *his* property which would practically destroy it as a river front? If there had been no attempt to describe the fishery, there would have been more plausibility in the plaintiff's claim. But it is described, and there is a subject-matter which fully satisfies the terms of the grant. Having fixed a precise boundary for the lower end, there was nothing to put the defendant

[Harvey *v.* Vandegrift.]

upon notice that the upper end of the fishery extended indefinitely up the river. On the contrary, he had the right to assume that it stopped where the plaintiff's land ends. It is manifest that the extent of the fishery was before the parties when the grant was made. They extended it twenty-eight perches below the plaintiff's land; if they had intended to carry it up the river beyond the land of the plaintiff, it is probable such intention would have been expressed by appropriate language.

We are of opinion that there was no such ambiguity in the grant of the fishery as required extrinsic evidence of its extent; that in view of the defendant's first point, it was the duty of the court to declare the proper construction of the grant as a matter of law; and that the grant of said fishery to the plaintiff was not notice, either actual or constructive, to the defendant, that the fishery extended up to and beyond his pier. This sustains the first, second, ninth, tenth and twelfth assignments of error. Those that remain need not be discussed.

Judgment reversed.