# McKinley, Appellant, *v.* Ulery.

*Easement—Right of way—Deeds—Parol testimony—Trespass.*

1. Where an owner of a lot divides it into two portions, and conveys the southernmost portion reserving a right of way over twelve feet running along the northern side of the portion conveyed, and thereafter conveys the remaining portion by a deed in which he grants the right of way over twelve feet of ground extending along the south side of the lot conveyed, and thereafter in all subsequent deeds in the line of title of the two lots, the same right of way is reserved in one line and granted in the other, the mere fact that at one time a stable opening only on the dominant tenement was built over one end of the right of way and subsequently moved, will not extinguish the right of way over the land on which the stable stood, where the evidence shows that the use of the land for stable purposes had been acquiesced in by the owners of both properties, and there is no contention that the length of the right of

way had by such use been shortened, or any portion of the original easement lost, or that the easement had been surcharged, although the owners of the servient tenement could make no use of the soil while covered by the stable.

2. When the description in a deed or devise is clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.

Argued April 18, 1911. Appeal, No. 21, April T., 1911, by plaintiff, from judgment of C. P. Washington Co., Nov. Term, 1909, No. 80, on verdict for defendants in case of Frank B. McKinley et al. v. W. H. Ulery et al. Before Rice, P. J., Henderson, Orlady, Head and Porter, JJ. Affirmed.

Trespass quære clausum fregit.

At the trial the jury returned a verdict for plaintiffs for $1.00. On a motion by defendants for judgment n. o. v. McIlvaine, P. J., filed the following opinion:

### QUESTION AT ISSUE.

The defendant, W. H. Ulery, tore down a wire fence about twelve feet long on the plaintiffs' lot, because, as he claimed, it obstructed a right of way that he and his co-defendant had over said lot. The plaintiffs sued them to recover damages for the injury done to their fence, claiming that the defendants had no right of way over their lot at the point where the fence was located. The real object of the suit is to determine the question of title to the right of way claimed by the defendants and denied by the plaintiffs.

### VERDICT OF THE JURY AND QUESTION OF LAW RESERVED.

At the trial the plaintiffs' counsel requested the court to charge the jury as follows: "The verdict of the jury must be in favor of the plaintiffs for nominal damages." The defendant's counsel requested the court to charge as follows: "Under all the evidence in the case the verdict

must be for the defendants." The court refused both these points but instructed the jury that if they believed the oral testimony of the plaintiffs, then their verdict should be for the plaintiffs for nominal damages, reserving however, the question of law raised by the defendants' point to be thereafter considered, as provided in the Act of assembly approved April 22, 1905, P. L. 286. The question therefore for our present consideration is whether or not "under the law and all the evidence in the case the Court should have instructed the jury to return a verdict in favor of the defendants."

FACTS.

The facts in the case are substantially undisputed. The evidence submitted may be considered under two heads, "Paper Title" and "Oral Testimony of Plaintiffs."

PAPER TITLE.

The plaintiffs and defendants own adjoining lots fronting on College street (formerly Second street) in the town of Washington, the defendants' lot being the lot on the Southwest corner of College and Wheeling streets and the plaintiffs' lot the lot immediately south thereof. Both the plaintiffs and defendants claim under William Hopkins who in the year 1852 became the owner of part of lots Nos. 44 and 45 in the original plan of the town of Washington, fronting 160 feet on the said College street (formerly Second) and 120 feet on Wheeling street (formerly Belle street).

In January, 1853, the said William Hopkins and wife conveyed the southern part of this lot to F. C. Morrison, the part conveyed being sixty feet on College street (formerly Second) and running back of equal width 120 feet to the west; with this reservation, however: "The said Hopkins reserves, however, for himself, his heirs and assigns, the right of way by means of a twelve foot alley, running along the northern side of said lot."

In December of 1853 the said William Hopkins and wife conveyed the remaining part of the lot they owned in

1852 to Elizabeth W. Acheson, the part conveyed to her being 100 feet on College street (formerly Second street) and running back 120 feet along Wheeling street (formerly Belle street) "with the right of way over twelve feet of width of ground extending along the south side of the said lot of ground."

In the year 1888 W. W. Smith and George W. Miller, then being the owners of the southern lot fronting sixty feet on College street, conveyed it to the plaintiffs, the description of the lot being as follows: " Fronting on said street sixty feet more or less and extending back therefrom of uniform width 120 feet more or less, adjoining property of Mrs. Wright on the south, property of said W. W. Smith and George W. Miller on the north, reserving nevertheless the right of way over the twelve foot alley on the north side of said lot for use of occupants of property on the north side of said alley, which alley shall be for the common use of the occupants and owners of said property and of grantees herein named, their heirs and assigns. It being the same property or lot of ground which was conveyed by William B. Chambers, sheriff of Washington county, Pennsylvania, to said W. W. Smith and George W. Miller by deed acknowledged in open court on January 10, 1883, on which lot hereby conveyed is erected a brick dwelling house."

In the year 1906 W. McK. Smith, U. Grant Smith and Gertrude Miller, devisees of W. W. Smith and George W. Miller, deceased, then being the owners of the lot immediately north of the McKinley lot, fronting 100 feet on College street and 120 feet on Wheeling street, conveyed the same to J. F. Taylor. In their deed, after describing the property as being adjoined on the south by the lot of F. B. McKinley et al., we find the following words: "Together with the right of way over a twelve foot alley on the north side of the said lot of F. B. McKinley et al., extending from College street over the north twelve feet of the said McKinley lot and along and adjoining the south line of the lot hereby conveyed, which alley is for the common

use of the occupants and owners of the property hereby conveyed and of the said McKinley lot, and is reserved in the deed of W. W. Smith and George W. Miller to F. B. McKinley and Queen M. McKinley dated September 29, 1888, and recorded in Deed Book 147, page 217."

In January, 1907, J. F. Taylor conveyed an undivided one-half interest in said lot to William H. Ulery.

These two lots changed hands a number of times after they were separately conveyed to different parties by William Hopkins, and at the time that W. W. Smith and George W. Miller conveyed the southern lot to Mr. and Mrs. McKinley they owned the north lot fronting 100 feet on College street and both died seized of it, so that their title thereto passed under their respective wills to the grantor in the J. F. Taylor deed, but the lots were always held as separate properties with the right of way over the southern lot.

### ORAL TESTIMONY.

From the testimony produced at the trial by the plaintiffs, it appears that at the time the conveyance was made by W. W. Smith and George W. Miller to Mr. and Mrs. McKinley, an old stable stood at the rear end of these two lots which was about twenty-five feet long and eighteen feet wide, and that about twelve and one-half feet of this stable was on the McKinley lot and about twelve and one feet of it was on the lot on the corner, and the stable belonged to and was used by the owners of the corner lot, the entrance into the stable being in the north end of the stable on said corner lot. The alley on the northern side of the McKinley lot at that time was opened from College street back to the east side of that stable and the owners of the corner lot went down the alley and went through a gate that was near the stable onto the corner lot and from there entered the stable at its northern end. Shortly after the title passed out of Smith and Miller to McKinley, the stable, which was an old one, was removed and the ground on which it stood was leveled up. Just before the lot was

conveyed to McKinley, he and John A. Howden who was the agent of Smith and Miller for the sale of the lot, went on the lot to measure it and in measuring along the north line from College street McKinley saw this stable and in order to get the 120 feet more or less of the north line had to put the measuring line through an opening in the weatherboarding of the stable, and noticed at that time that the only entrance into the stable was from the north end. The wire fence torn down by the defendant, W. H. Ulery, was located on the part of the right of way which he claimed was covered by the south end of this old stable.

### CONCLUSION.

Under these facts the question arises, whether or not there is sufficient evidence in the case to support the contention of the plaintiffs that the right over their lot does not run back the full 120 feet, the depth of the lot, but only to a point where the old stable formerly stood or to the east line of that old stable.

The original reservation in the deed of William Hopkins to F. C. Morrison, made in January, 1853, created this easement. He at that time owned the ground immediately north of the piece that he conveyed to Morrison, and in making that conveyance he used these words: "Reserves, however, for himself, his heirs and assigns, the right of way by means of a twelve foot alley, running along the northern side of said lot." The deed itself gives the northern line of said lot as 120 feet more or less, and clearly the words "along the northern side of said lot" mean along the entire 120 feet of that side of the lot. The grantor still emphasizes this meaning when in December, 1853, he conveys the northern part of the lot to Mrs. Elizabeth W. Acheson. In the conveyance then made to her, after describing the lot as being 120 feet deep along its southern side, he uses these words: "With the right of way over twelve feet of width of ground extending along the south side of the said lot of ground," that is, the right of way was to be as long as the south side of the corner lot.

The deed of Smith and Miller in conveying the southern lot to the plaintiffs has the reservation expressed in these words: "Reserving, nevertheless, the right of way over the twelve foot alley on the north side of said lot for use of occupants of property on the north side of said alley, which alley shall be for the common use of the occupants and owners of said property and of grantees herein named, their heirs and assigns."

The deed of the devisees of Smith and Miller in conveying the north lot on the corner to J. F. Taylor describes the easement that they take in these words: "Together with the right of way over a twelve foot alley on the north side of the said lot of F. B. McKinley et al., extending from College street over the north twelve feet of the said McKinley lot and along and adjoining the south line of the lot hereby conveyed, which alley is for the common use of the occupants and owners of the property hereby conveyed and of the said McKinley lot, and is reserved in the deed of W. W. Smith and George W. Miller to F. B. McKinley and Queen M. McKinley dated September 29, 1888, and recorded in Deed Book 147, page 217."

There is nothing in the intermediate deeds conveying either of these lots that in any way suggests a change in the easement as originally created by William Hopkins, the common source of title.

Under the written evidence we are clearly of the opinion that William H. Ulery and J. F. Taylor as the owners in fee simple of the lot on the corner of Wheeling and College streets, fronting 100 feet on College street and 120 feet on Wheeling street, have a right of way over the twelve feet of ground lying along the north side of the McKinley lot its entire length,—120 feet more or less.

The next question that arises is this: Can the meaning of the language of these written deeds of conveyance be changed by parol testimony? We think not, in the absence of any evidence showing fraud, accident or mutual mistake in the execution of the McKinley deed. There is no claim that either the grantors in that deed or their

agent represented to the grantees that the right of way did not run along the north side of the lot conveyed as described in the deed but only part way along the north side. The deed originally creating the easement was on record, and nothing was said by the grantors or their agent to lead the grantees in the McKinley deed to suppose that they, the grantors, intended to change the character of the easement therein described. But it is claimed that one of the grantees in company with the agent of the grantors measured the lot and found a stable on the right of way as it was described in the old deeds at the western end thereof, and that he concluded that the right of way was only over the twelve foot alley from College street to the stable, notwithstanding the deed called for a right of way along the north side of the lot, and the north side of the lot is 120 feet long. If the alley can be shortened because a stable was standing on it, why can't the north line of the lot also be shortened because a stable that belonged to the north lot stood on it, or, in other words, why could not Smith and Miller, after they made their deed, claim the little piece of ground in the northwest corner of the McKinley lot, because a stable belonging to them stood on it and the grantee knew that before he bought the lot and saw it when he measured the lot with the grantors' agent, Mr. Howden? To state it in another way, if the plaintiffs could ask Smith and Miller to move their stable so they could use the little corner of ground that it stood on and which was included in the description as found in their deed, why could not Smith and Miller use the right of way as described in the deed after the stable was removed?

The statute of frauds requires evidence of title to land to be in writing and when in writing the written instrument cannot be changed except for fraud, accident or mutual mistake, nor can parol evidence be introduced to explain away the meaning of words that are not ambiguous. A right of way along the side of a lot which is 120 feet long is a right of way 120 feet long. The fact that there is a stable on it when the deed is made does not affect the title to the

easement but only postpones its full use until the stable is removed.

And now, April 21, 1910, the defendant's motion for judgment non obstante veredicto came on to be heard and was argued by counsel whereupon, upon due consideration, it is ordered, adjudged and decreed that the same be sustained and judgment is entered for the defendants and against the plaintiffs for costs.

*Error assigned* was in entering judgment for defendants n. o. v.

*Andrew M. Linn,* for appellants.—Parol evidence is admissible, in respect to the subject-matter, the situation and relation of the parties, and all the circumstances, to explain any ambiguity apparent upon the face of an instrument: Collins v. Rush, 7 S. & R. 147; Mehaffy v. Share, 2 P. & W. 361; Steigleder v. Marshall, 159 Pa. 77; Barnhart v. Riddle, 29 Pa. 92; Safe Deposit & Trust Co. v. Bovaird & Seyfang Mfg. Co., 229 Pa. 295.

*Norman E. Clark,* with him *Winfield McIlvaine,* for appellees.—Parol evidence is not admissible to give a writing a construction conformable to the secret intentions which one or both of the parties may have entertained but which the writing fails to express: Harvey v. Vandegrift, 89 Pa. 346; Carroll v. Miner, 1 Pa. Superior Ct. 439; King v. Gas Coal Co., 204 Pa. 628; Light v. Miller, 38 Pa. Superior Ct. 408.

OPINION BY HEAD, J., July 13, 1911:

Some time prior to January 1, 1853, William Hopkins, the common ancestor in title of plaintiffs and defendants, became the owner of a parcel of ground in the borough of Washington on the southwest corner of Wheeling and College streets. The parcel as a whole had a frontage of 120 feet along Wheeling street and 160 feet along College street. It consisted of the major portion of two lots

Nos. 44 and 45, as originally platted in that portion of the town. These lots each fronted sixty feet on Wheeling street and extended of uniform width southward 240 feet to what is now known as Strawberry alley. At some time earlier than the date mentioned, Hopkins, or some previous owner, had so far rearranged the original plan as to sell off the southernmost eighty feet of these two lots thus making a new lot fronting eighty feet on College street and extending back 120 feet to the line of original lot No. 46. Apparently deeming it advantageous to follow this arrangement, Hopkins, on January 1, 1853, conveyed to one Morrison the southernmost sixty feet of the property as first above described, thus making it front eastward on College street. The description shows that the lot was to extend of the same width by parallel lines and at right angles with College street 120 feet. In that deed the grantor made the following reservation: "The said Hopkins reserves, however, for himself, his heirs and assigns, the right of way by means of a twelve foot alley running along the northern side of said lot." In December following Hopkins sold the remainder of his property as first herein described, fronting 100 feet on College street and extending back westward therefrom 120 feet to the line of original lot No. 46, and in addition thereto the following easement, viz.: "with the right of way over twelve feet of width of ground extending along the south side of the said lot of ground."

By reason then of the reservation in the one deed and the corresponding grant in the other it seems as clear as the ordinary use of English language could make it that the common ancestor in title of the parties to this action created both a dominant and servient tenement. Just as clearly the service which the former could rightfully demand and the latter must lawfully yield was coextensive with a strip of ground twelve feet in width extending the entire depth of both properties, to wit, 120 feet, from College street on the east to the line of lot No. 46 on the west. We say the language of these conveyances is so

plain, so readily to be understood by layman as well as by lawyer, that it requires the aid of no legal rules of construction. Nor can it furnish any proper foundation for the argument that it contains any ambiguity which requires the aid of parol testimony to explain it. When Morrison, the ancestor of the plaintiffs, came to convey the lot which they now own, he in turn reserved "for the use of the owner of the adjoining property on the north a twelve foot alley running along the north side of said lot." In the hands of that vendee of Morrison the same lot was levied on by the sheriff and sold to Smith & Miller by a conveyance from William B. Chambers, high sheriff, etc., duly acknowledged in open court on January 10, 1883. There can then be no room for doubt that when the servient tenement thus became vested in Smith & Miller by the sheriff's deed just referred to, it was subjected to an easement of way along its northern line twelve feet in width and as long as said northern line, to wit, 120 feet.

In the other line the dominant tenement passed by several mesne conveyances until it was acquired by one Sexton in 1868 and as his property it was levied on and sold by the sheriff to Rush in 1878. In all of the conveyances in this line of title the easement originally reserved by Hopkins, in his deed to Morrison, was described and granted in language substantially similar, and there can be no doubt that easement, as an incident to the dominant tenement, passed by the sheriff's sale last mentioned to Rush: Richmond v. Bennett, 205 Pa. 470. Rush conveyed to Smith & Miller, already mentioned, in 1882, and therefore by their subsequent purchase of the servient tenement at the sheriff's sale in 1883 the title to both properties became reunited in them.

By a deed dated September 29, 1888, the said Smith & Miller conveyed to the present plaintiffs a lot of ground on the west side of College street: "fronting on said street 60 feet more or less and extending back therefrom of uniform width 120 feet more or less, adjoining property of Mrs. Wright on the south and of said Smith & Miller on

the north, reserving nevertheless the right of way over the twelve foot alley on the north side of said lot for use of occupants of property on the north side of said alley, which alley shall be for the common use of the occupants and owners of said property and of the grantees herein named, their heirs and assigns. It being the same property or lot of ground which was conveyed by William B. Chambers, sheriff, &c., to said Smith & Miller by deed acknowledged in open court on 10th day of January, 1883."

Was there anything in the language of the reservation in this deed just quoted to show that the grantors intended to reduce in length the right of way so often referred to and shear the dominant tenement of a part of what had been incidental to it since 1853? We can see nothing. The thing reserved was the right of way "over the twelve foot alley on the north side of said lot." That way or alley had been since 1853 coextensive in length with the lot line. Moreover, the deed declared that what was being thereby conveyed was the "same property" which had come to the grantors by the sheriff's deed of January 10, 1883. We have already seen that when the said Smith & Miller acquired title to the lot which they thus undertook to convey it was subject to an easement of way over a strip twelve feet in width extending from College street on the east along the entire northern line of the lot 120 feet to the line of lot No. 46 on the west.

Were there nothing else in the case then than the conveyances already mentioned it would seem too clear for argument that by applying the language of the several grants and reservations to the situation on the ground, there would be no difficulty whatever in ascertaining either the location or the extent of the said easement. In such cases there is no occasion for the introduction of parol testimony, either to identify the subject-matter of the grant or by way of explanation of an alleged ambiguity where none exists, unless it be created by the introduction of the parol testimony itself: Harvey v. Vandergrift, 89 Pa. 346; King v. Coal Co., 204 Pa. 628. In the latter

case Mr. Justice MESTREZAT, after citing many authorities, among them Cook v. Babcock, 61 Mass. 526, uses the following language: "Mr. Starkie says: 'When a subject-matter exists which satisfies the terms of the conveyance, there is no latent ambiguity, and no evidence can be admitted for the purpose of explaining the terms of the deed of conveyance.' And in Cook v. Babcock, it is said by SHAW, C. J., speaking for the court, that when the description in a deed or devise is clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different."

But it appears that at some time during the transmission of these titles along the lines indicated a stable was constructed in the southwest corner of the dominant tenement. The evidence does not disclose by whom or when it was erected, but it was certainly before the purchase by the plaintiffs in 1888 and probably some considerable time before. It was so constructed that it faced north and could be entered only from the dominant tenement; about half of it in length stood on that property and the remaining half of it, its rear portion, stood on the extreme western end of the twelve foot right of way. As stated, however, there was no entrance to it from that right of way, the owner of the dominant tenement being obliged to turn from the alley into his own property in order to have access to the only entrance to the stable. For whatever length of time it stood, such use of it seems to have been acquiesced in by the owners of both properties, and no one contended either by recital or description in any conveyance or other declaration that the length of the right of the way had by such use been shortened or any portion of the original easement lost, nor even that the easement was being surcharged, although the owners of the servient tenement could make no use whatever of the soil that belonged to them while thus covered by the building. After the present defendants acquired title they ceased to use the stable and permitted the plaintiffs,

at their request, to move it entirely on their own property. They then undertook to assert that the defendants had lost title to that portion of the original easement or right of way which had been for a time occupied by a portion of the stable and proceeded to fence it as part of their property, thus preventing the defendants from obtaining access through said way to a new alley west of their property, running north and south, which had been opened up by the owners of original lot No. 46. The defendants removed that fence and this action of trespass followed.

The learned trial judge, permitting a verdict for the plaintiffs for nominal damages, reserved the question of the legal effect of all the conveyances referred to and afterwards entered judgment n. o. v. for the defendants. The opinion he filed forcibly states the ground on which the judgment rests, and we have therefore contented ourselves by thus briefly indicating the reasons that impel us to reach the same conclusion.

Judgment affirmed.