GEORGE W. NICHOLS *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

February 28, 1887.

**Railway—Fires kindled by Locomotive—Action by Owner of Property burned—Collection of Insurance Money pending Suit.**—The plaintiff's buildings, alleged to have been destroyed by fire negligently communicated by one of defendant's engines, were insured at the time, and, after the commencement of this action, the amount for which they were insured was received by plaintiff. *Held,* that the action might properly be continued and prosecuted to judgment by plaintiff.

**Same—Presumption of Negligence—Question for Jury.**—Evidence in plaintiff's behalf *held* sufficient to raise a presumption of negligence on the part of the defendant; and the question whether, under the circumstances disclosed, such presumption was rebutted by the testimony of defendant's witnesses, was for the jury.

Appeal by defendant from an order of the district court for Scott county, *Macdonald,* J., presiding, refusing a new trial after verdict for plaintiff. The action was brought to recover the value of a farmhouse, granary, and other buildings, with their contents, destroyed by fire kindled, as alleged, by sparks from a locomotive of defendant, the complaint charging that the locomotive was improperly constructed and negligently operated.

*John D. Howe, Lorin Cray,* and *C. D. O'Brien,* for appellant.

*Benton & Roberts,* for respondent.

VANDERBURGH, J. 1. The plaintiff's buildings, destroyed by fire alleged to have been communicated by one of defendant's locomotive engines, were insured at the time, and the amount of the loss covered by the insurance policy was received by plaintiff since this action was commenced. The defendant claims that the insurance company thereby acquired an interest in the cause of action herein, and should have been made a party. Whether it did in fact acquire any such interest we do not consider, since by the terms of the statute this action might in any event proceed to its conclusion without the necessity of any change or substitution of parties. Gen. St. 1878, *c.* 66, § 41.

2. In respect to the points made, that the verdict and special findings in this case are unsupported by the evidence, and that the court erred in refusing to dismiss the action on that ground, we think the evidence in the plaintiff's behalf, tending to show when and where the fire caught in the grass between the right of way and plaintiff's house, and the manner in which it spread to and ignited the building after the train passed, in connection with the fact that, under the influence of a strong north wind blowing at the time, any sparks thrown from the engine would necessarily be carried in that direction, was sufficient to make a case for the jury, and these questions cannot properly be reconsidered in this court. And the same thing must be said as respects the alleged contributory negligence of the plaintiff in leaving his premises exposed to such dangers. The jury, on this last point, might properly take into consideration the fact that the house was about ten rods distant and upwards of 40 feet above the right of way, and upon a high stone foundation, and the degree of liability of its being destroyed from such cause, especially if the engines of the company were operated with reasonable care.

3. It is very earnestly insisted, however, that the evidence of the defendant's witnesses so completely established the absence of any negligence on its part, as respects the management, character, or condition of the engine by which the alleged fire was communicated, that the trial court should have directed a verdict. The trial court is so far satisfied with the verdict in the case that it has refused to set it aside as against the weight of the evidence. If it had done so in the exercise of its discretion, we should certainly have found nothing to criticise in such action; but, as the case stands, we are to consider the question whether, as matter of law, the presumption of negligence arising from the fact that the fire was kindled by the engine appears to have been so clearly overcome by the evidence of defendant's witnesses as to leave nothing for the jury in the case. We are unable so to decide. The witnesses on this question were employes of the company whose acts or omissions were the subject of inquiry, and the jury were to judge as to the weight and credibility of their testimony under the circumstances.

The engineer who operated the engine in question was examined

as an expert on defendant's behalf, and, among other things, testified, in general terms, that he operated it in a careful manner on this occasion, and in the ordinary way, as he had for years.  It was hauling a freight train of 28 cars on an up-grade at this point.  He testifies that the engine was not laboring very hard,—not so hard as at many other places on the road,—but that in such cases "the·harder it works the more it blows the smoke and cinders" through the smoke-stack, but that in respect to the emission of sparks a great deal depends upon the speed of the train.  He was using Iowa soft coal, and had been on the road with the engine about 10 hours at the time. It is evident, we think, that this witness did not have any special or distinct recollection as to the manner he operated the engine with respect to any apprehended danger from fires on the occasion referred to.  He managed it in the ordinary way.  But special care is required to be exercised to meet the exigencies of special circumstances; and the draught, pressure of steam, and speed of the train must·be regulated accordingly.  He also explained that the object and effect of the cone suspended in the smoke-stack is to break up the sparks and cinders so fine that only very small sparks and cinders can get through the netting; and upon the cross-examination he stated that he had· never known this engine to set fires, and if it did throw sparks and set fires, it must have been out of repair.  This statement he persisted in upon his re-examination by the defendant's counsel, only qualify-- ing it subsequently by saying that it depended on the proximity of combustible matter.  Evidently he intended the jury to infer that the sparks were made too fine to kindle fires.  In this particular instance; assuming the fact to be, as the jury must have found, that the fire was in fact kindled by cinders thrown from the engine upon defendant's land beyond the right of way, the evidence of this witness did not *conclusively* rebut the presumption of negligence in handling the engine· under the circumstances, viz., the presence of a strong wind, a heavy train on an up-grade, and an adjoining field of combustible grass. The degree of care to be exercised in any particular case must be regulated by the danger reasonably to be apprehended.  *Grand Trunk R. Co.* v. *Richardson*, 91 U. S. 454, 469.  The special finding of the· jury, therefore, that the fire which escaped from defendant's engine·

was communicated to and destroyed plaintiff's property because the engine was negligently managed, is sustained by the record. And this is an independent finding, sufficient by itself to support the general verdict.

The inspectors testify that they examined the netting, smoke-stack, and cone on and before the day of the accident, and found them in good condition. The testimony of one of them is that on the next morning he was specially directed to look over this engine carefully, and that he did examine it twice. We think it questionable whether, in the face of the evidence of its subsequent condition, the special findings as to its being defective and out of repair, based on the statutory presumption of negligence, can be supported. But, for the reason stated, this question, and others arising upon the rejection of evidence upon the same issues, need not be considered. Nor can we assume that the special findings on these points influenced the judgment of the jury upon the determination of the question of the negligent or careful management of the engine, which was determined wholly upon the evidence of the engineer, who had no knowledge that it was not in good order, and operated it as he usually did.

4. There was, we think, sufficient foundation laid for the evidence of the witness Chadderton, of the value of the buildings destroyed. He was a carpenter, had some knowledge of them, and had heard the testimony of other witnesses describing them in the condition they were in when destroyed. The value of his testimony, after it was sifted upon cross-examination, was for the jury.

5. The property destroyed was situated between Jordan and Belle Plaine, and near the latter village. A witness called to prove the value of grain burned in one of the buildings, stated that he was a farmer and sold grain, and knew the value of wheat and corn in the vicinity of Belle Plaine in May, 1885, (though he marketed his own at Jordan,) which he testified was 70 to 72 cents per bushel for No. 1 wheat, and 40 cents for corn. The evidence as to value was objected to on the ground that no foundation was laid for it. We think there was no abuse of discretion in allowing the witness to testify. It had been previously proved, without objection, that the wheat was worth about two-thirds as much as good first-class wheat.

The defendant excepted to certain paragraphs of the charge of the court, which in themselves are inaccurate and subject to criticism; but, taken in connection with the entire charge, and the requests asked by the defendant, which were given, no prejudice could have resulted, particularly in view of the special finding of fact by the jury, which necessarily controlled the disposition of the case.

Order affirmed.