Ridenour v. Woodward.

W. S. RIDENOUR *et al. v.* WILL WOODWARD.

(*Knoxville.* September Term, 1915.)

1. **BAILMENT.** Accommodation bailments.  Degree of care.
A bailee for the accommodation of the bailor is answerable only for his gross negligence or bad faith, the degree of care being measured, however, with reference to the nature of the article bailed,  (*Post, pp.* 623, 624.)

Cases cited and approved:  Whitmore v. Haroldson, 70 Tenn., 312; Hotel Co. v. Holohan, 112 Tenn., 214; Marshall v. Railroad & Light Co., 118 Tenn., 254; Colyar v. Taylor, 41 Tenn., 372.

2. **BAILMENT.** Accommodation bailment.  Liability of bailee.
Plaintiffs delivered money and checks to defendant salesman to carry to another town and deposit to their credit.  Being warned by the bookkeeper of the house for which the salesman traveled as to danger of carrying the money to his house, he made it his custom to deposit the funds in an iron safe of a drug company, because he arrived at the place of deposit after banking hours.  A deposit against which the merchants notified him they had drawn was placed in the drug company's iron safe, and, when the salesman who had been otherwise engaged called for it two days later, it had disappeared.  *Held* that, as every parting with an article bailed will not work a conversion, the salesman was not guilty of converting the fund, though he did not deposit it the earliest possible moment.  (*Post, pp.* 624-629.)

Cases cited and approved:  Spooner v. Manchester, 133 Mass., 270; Fouldes v. Willoughby, 8 M. & W., 540; McNeill v. Brooks, 9 Tenn., 73; Harvey v. Epps, 12 Grat. (Va.), 153; Weller v. Camp, 169 Ala., 275; Kirtland v. Montgomery, 31 Tenn., 452.

Cases cited and distinguished:  Jenkins v. Bacon, 111 Mass., 373; De Tollenere v. Fuller, 1 Mill, Const. (S. C.), 117; Christian v. First Nat. Bank, 155 Fed., 705; Cicalla v. Rossi, 57 Tenn., 67.

Ridenour v. Woodward.

FROM CAMPBELL.

Appeal from the Chancery Court of Campbell County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. —HUGH G. KYLE, Chancellor.

OWENS & TAYLOR, for plaintiffs.

TEMPLETON & JENNINGS, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

W. S. Ridenour and C. C. Ridenour, a firm doing a mercantile business, brought this suit to recover $400 and interest, alleged to be due them because of the failure of Woodward, as bailee, to deposit in the First National Bank, of Jellico, checks and money intrusted to him for deposit to their credit.

Woodward was a traveling salesman in the employ of Hackney & Company, a wholesale grocery establishment doing business in Jellico, and on his trips through the trade territory he was accustomed to call on and make sales to the complainant firm, the store of which was located at a small railway station about sixteen miles out from Jellico, which store was in charge of C. C. Ridenour.

Ridenour had from time to time, for a period of nine months preceding the incident that occasioned this

litigation, sent money and checks by Woodward to Jellico to be deposited to the firm's credit in bank. Woodward made his trips from Jellico to the complainants' store by the railroad. The train's schedule for the return trip called for arrival at Jellico at seven-twenty at night, which was after banking hours. At the first Woodward began taking the money of complainant so intrusted to him to his home in the suburbs of Jellico, about one-fourth mile beyond the city limits and about one-half mile beyond the district where the streets were lighted; and the next day take the same to the bank for deposit or carry it to the establishment of Hackney & Company, his employers, and intrust it to the bookkeeper to be deposited in bank. Woodward was cautioned by this bookkeeper that there was danger of loss attending this method, and a change was made; Woodward taking the funds to some downtown store and depositing the same in an iron safe commonly used for the keeping of valuables. Several times he had used the safe of the Smith Drug Company for that purpose, and several times other safes. He testifies, without contradiction, that he had not uniformly delivered. the money from the safe to the bank on the day next succeeding such lodgment, but that at times he delayed doing so for a day or two.

On the afternoon of July 22, 1912, which was Monday, C. C. Ridenour handed to Woodward for deposit the $400 in question, which was placed that night in the safe of Smith & Company. His business called him from Jellico on Tuesday morning before banking hours.

He returned in due course of the business of his employers on Tuesday night after banking hours. On Wednesday morning he again went to the store of Smith & Company without making inquiry as to the money, thence out of town on an early train for a short business trip, but returned to the city at ten forty-five, after the bank was opened, called at the drug store, and asked for the money that he had left there on Monday night, when on search of the safe it was discovered that the funds had disappeared. The testimony does not disclose what became of it, though it is found by both of the lower courts that it was not purloined by Woodward.

C. C. Ridenour informed Woodward at the time the funds were intrusted to him that he had drawn or was drawing checks on the bank against the same. Other facts are set out in the discussion which follows:

The court of civil appeals held that Woodward was liable to respond as for a conversion of the funds so lost. We have granted the writ of *certiorari* in order to a review of that decree.

The rule is that a bailee for the accommodation of the bailor is only answerable for his gross negligence or bad faith, the care to be taken by him to be measured, however, with reference to the nature of the thing placed in his keeping. *Whitemore* v. *Haroldson,* 2 Lea (70 Tenn.), 312; *Hotel Co.* v. *Holohan,* 112 Tenn., 214, 79 S. W., 113, 105 Am. St. Rep., 930, 2 Ann. Cas., 345; *Marshall* v. *Railroad & Light Co.,* 118 Tenn., 254,

101 S. W., 419, 9 L. R. A. (N. S.), 1246, 12 Ann. Cas., 675.

The court of appeals was of opinion that the holding in the case of *Colyar* v. *Taylor,* 1 Cold. (41 Tenn.), 372, controls this case. In that case Taylor had received from a bank in Nashville money for Colyar to be delivered gratuitously at Winchester. After receiving the money, he took it to the public fair grounds in the vicinity of Nashville, where he met one Estill, who was prevailed upon to take charge of and make the delivery of the money. The money was counted out in public view, within a few steps of the promiscuous crowd, before it was passed to Estill. Shortly after Estill got upon the train, not far distant from the fair grounds, and soon after taking his seat discovered that his pocket had been picked. The ruling was that such parting of possession to Estill was a conversion since it was unauthorized, and also that there was gross negligence shown by the circumstances.

Accordingly, the court of civil appeals held that the placing of the intrusted funds in an iron safe of another person was without authority and constituted a conversion by Woodward.

It may be truly said that the earlier decisions go along rigid lines and show but slight, if any, disposition of the courts to indulge in inferences in favor of the bailee.

Clearly, it is not every parting with the possession by the bailee of the thing bailed that will work a conversion; there may be a parting that is qualified and

temporary, evincing no intention on the part of the bailee to exercise a dominion over the same inconsistent with the right of the owner, but consistent with a further or continued control as to the delivery designated to be made by the bailee. *Spooner* v. *Manchester,* 133 Mass., 270, 43 Am. Rep., 514; *Fouldes* v. *Willoughby,* 8 M. & W., 540.

In *Jenkins* v. *Bacon,* 111 Mass., 373, 15 Am. Rep., 33, where the conclusion was a hard ruling of liability on the part of the defendant bailee charged with a conversion, it was yet conceded that:

If "for . . . sufficient reason it should become inconvenient or unsafe that he should retain the manual possession of the bond, he would undoubtedly be at liberty to deposit in any other place or mode, in which he . . . might deposit his own property of the like description. But, as between the original depositor and himself, he would continue to be the lawful and responsible custodian, and bound to practice that degree of care which the law requires of gratuitous bailees."

The court of civil appeals erred in not taking note of and following the trend of the modern authorities, which is to break away from the stern rules which many of the courts of England and of this country were at one time disposed to apply to acts of a bailee claimed to be a deviation, and therefore to effect a conversion.

Mr. Freeman in his annotations of the case of *De Tollenere* v. *Fuller,* 1 Mill, Const. (S. C.), 117, at 12

132Tenn.40

Am. Dec., 616, 621, after citing with approval our case of *McNeill* v. *Brooks,* 9 Tenn. (1 Yerg.), 73, said:

"It is certainly a hard rule to hold that slight acts of misuser, by a bailee, of the thing bailed, are to be regarded as evidence of a permanent appropriation of the property to his own use. Perhaps a more reasonable doctrine is that of a majority of the court in *Harvey* v. *Epps,* 12 Grat. (Va.), 153, etc."

Schouler, in his work on Bailments, remarks on this point that:

"The leaven of common sense, which keeps our law in constant ferment, is here at work, recalling the injustice of visiting blameworthy and blameless deviation with the same penalties of absolute or insurance accountability."

The same writer, contending for a reasonable construction of the contract or undertaking of bailment, said that the same ought not to be too literally construed against a bailee who may have found himself obliged to act while away from the bailor, and forced to act on his own judgment; and that "the good sense of the contract should interpret favorably, where restrictive use was not clearly specified." Schouler, Bailments, secs. 140, 141; *Weller* v. *Camp,* 169 Ala., 275, 52 South., 929, 28 L. R. A. (N. S.), 1106.

Particularly should this be true in cases of bailments for the accommodation of the bailor. The law should not be so technical and penalizing on the question of diversion or deviation as to discourage and check the

Ridenour v. Woodward.

doing of acts of accommodation by one person for another in the spirit of neighborly kindness.

In a case involving a claim of wrongful delivery to another person by a mandatary that amounted to a conversion (*Christian* v. *First Nat. Bank,* 155 Fed., 705, 84 C. C. A., 53), it was said by Van Devanter, Cir. J.:

"As. is said by Schouler, in his work on Bailments (3 .Ed., secs. 58, 63), 'the courts are indisposed to extend by inference, the perils of an unprofitable trust,' and 'every bailee without reward ought to be given the least trouble consistent with his actual undertaking.' This is in keeping with the rule that, when a contract is fairly open to two constructions, it is legitimate to adopt the one which equity would favor."

This modern tendency was exemplified in the holding of this court in the case of *Cicalla* v. *Rossi,* 10 Heisk. (57 Tenn.), 67. In that case money was the subject-matter of bailment for accommodation, the contract of which was evidenced by a written and signed memorandum as follows:

"Received from Giovanni Rossi the sum of five hundred and fifty dollars for safe keeps until he call for it."

The bailee, Cicalla, instead of keeping the money in his immediate possession, deposited it in his own name in a bank in the city of Memphis that he considered safe but which later failed. The court, on the question of a conversion on the part of the bailee by reason of his making such a deposit, said:

"The material point of controversy, and the one on which the case should turn, is whether or not the defendant in depositing the money in bank in his own name acted in accordance with the consent of the plaintiff, either expressly given or fairly to be implied from the circumstances and conversation had at the time."

Applying these principles to the facts of the pending case:. We think it manifest that Woodward acted with a fairly commensurate discretion when he placed the money and checks of the bailors in the iron safe for safe-keeping, and that by fair inference from all of the circumstances that action was in the interest of the bailors and consented to by them.   They, themselves, in similar circumstances, had made like deposits in safes in  Jellico overnight, which fact was known to Woodward at the time of the lodgment here in question.   *Kirtland* v. *Montgomery,* 1 Swan (31 Tenn.), 452, 458.

The court of civil appeals was of the opinion that there was no excuse for Woodward not having the bookkeeper of Hackney & Company get the money on Tuesday morning and deliver it to the bank.   But this quarrels with the very ground of liability of the bailee assumed by that court—that the mere act of parting with possession without authority to a third person for a consummation of the delivery would constitute a conversion.   Moreover, Woodward explains that the bookkeeper was more than ordinarily busy with his own duties, it being near the close of the month when he was engrossed with his work as accountant.

Ridenour v. Woodward.

Much stress is laid upon the fact that the funds were allowed to remain in the safe until up into the second day, especially in view of the fact that Ridenour had informed Woodward that he was drawing checks upon the deposit thus to be built up. If the fund was not one converted by the act of the placing of it in the safe of another, this later circumstance would seem to be one only to be looked to in ascertaining the degree of care taken by the bailee. Did he hold the funds so long as to reach to gross negligence on his part?

It seems to us that in fairness the bailors must be deemed to have known that Woodward's first duty, on the day succeeding the deposit in the safe, was to his own employers, and that his service for their accommodation must have been accepted with the tacit understanding that Woodward's time was not his own. Was it reasonable for them to demand or expect that Woodward should give over carrying out his employers' schedule, mapped out for him for Tuesday, in order that the deposit should reach the bank before Wednesday? We think not. Clear it is that a case of gross negligence is not made out.

The decree of the court of civil appeals is reversed; decree here dismissing the bill of complaint at complainants' cost.