MINNIE PENNINGTON v. FARMERS' & MERCHANTS' BANK.

(*Nashville,* December Term, 1920.)

1. **BANKS AND BANKING.** Bank held to become bailee of bond and not only box in which kept.

Where purchaser of Victory Bond from bank understood the bond was to be placed in her father's tin box in the vault, but relied upon the promise of the bank president to take care of the bond for her and his assurance that it would be safely kept, the bank clearly became a bailee of the bond itself, and not a bailee of the father's box, and the bank was liable, if at all, for its loss by robbery, under Thomp. Shan. Code, section 2099, and not under sections 2100, 2102. (*Post, pp.* 193-194.)

Cases cited and approved. Sawyer v. Old Lowell National Bank, 230 Mass., 342.

Code cited and construed: Secs. 2099, 2100, 2101, 2102, (T.-S.).

2. **BAILMENT.** Care to be exercised by bailee.

Bailee under a bailment for the sole benefit of the bailor is bound to use a degree of diligence and attention adequate to the performance of his undertaking, and care and diligence which would be sufficient as to goods of small value or of slight temptation might be wholly unfit for goods of great value and very liable to loss and injury. (*Post, pp.* 194, 195.)

Cases cited and approved: Jenkins v. Motlow, 33 Tenn., 248; Kirtland v. Montgomery, 31 Tenn., 452; Colyar v. Taylor, 41 Tenn., 373; Mariner v. Smith, 52 Tenn., 203; Cicalla v. Rossi. 57 Tenn., 67; Ridenour v. Woodward, 132 Tenn., 620.

3. **BANKS AND BANKING.** Whether proper care was exercised as to bond deposited held for jury.

In an action against a bank to recover the value of a Victory Bond left with the bank for safe-keeping and stolen by burglars, whether bank exercised proper care *held* for the jury. (*Post, p.* 196.)

4. **BANKS AND BANKING.** Usage and custom as affecting care exacted of bailee.

Usage and custom in a particular business reflect on the care exacted of a bailee, but in an action against a bank to recover value of bond stolen from vault by burglars it was not competent to permit defendant to prove what one or two other banks may or may not have done toward safeguarding their valuables, the business policy of burglary insurance companies, nor advertisements of bank, where plaintiff relied wholly on personal assurances from the bank president. (*Post. p.* 196.)

Cases cited and approved: Kelton v. Taylor, 79 Tenn., 264; Railway Co. v. Manchester Mills, 88 Tenn., 653.

FROM MAURY.

Appeal from the Circuit Court of Maury County.— HON. W. B. TURNER, Judge.

SAM HOLDING and L. H. HAMMOND, for appellant.

PERCY S. CHANDLER and HUGHES, HATCHER & HURHES, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

Plaintiff brought this suit to recover from defendant the value of a $1,000 Victory Bond which belonged to her and had been lodged in the bank's vault for safekeeping. The bank was robbed, its vault being blown open by burglars, and plaintiff's bond, alone with other valuable papers, taken.

The circuit judge directed a verdict in favor of the defendant, and the plaintiff appealed in error to the court

of civil appeals. That court transferred the case to this court, conceiving that the constitutionality of an act of the legislature was involved.

The form of charter provided by our statutes for banks and trust companies, under which statutes defendant is incorporated, contains, among other things, the following:

"It shall have the right to construct a vault on its real estate, or to rent any vault already constructed or to be constructed, which, in the judgment of the directors, will provide reasonable means of safety against loss by theft, fire, or other cause, in which vault may be fixed or placed safes, boxes, or receptacles for the keeping of jewelry, diamonds, gold, bank notes, bonds, notes, and other valuables, which boxes, safes, or receptacles may be rented by the corporation to other persons or corporations, on such terms as may be agreed by the parties."

"In no event shall the corporation be liable for any loss of said jewelry, diamonds, gold, bank notes, bonds, notes, or other valuables thus lost by theft, robbery, fire, or other cause, the said corporation not being the insurer of the safety of said property, nor in any manner liable therefor. The corporation is not required to take any note or property thus deposited, as the person who rents a safe, box, or receptacle, is, for the term of his lease, the owner thereof."

Sections 2101, 2102, Thompson's Shannon's Code.

The circuit judge was of opinion that these sections were applicable to this case, and that under the provi-

sions of section 2102 defendant could not be held liable for the loss of said bond, kept as hereafter described.

We cannot agree with the learned trial judge in this conclusion.

We think such sections cover a case where a particular bor or space in its vault is rented or leased by the bank. This is made clear by the provision that the person renting the box or receptacle is, for the term of his lease, the owner thereof. A rental contract is clearly contemplated. The customer selects his space, fills it as he pleases, and takes his chances under the statute.

We have no such a case before us. Plaintiff's father had a tin box which the bank had presented to him. He kept his valuable papers in this box. The bank undertook to care for the box without charge. Mr. Pennington had rented no space or receptacle in the bank's vault, and the bank was free to keep his box where it thought proper. The plaintiff's bond was placed in this box belonging to her father so intrusted to the bank.

We think this bailment was undertaken by the bank under the authority of another provision of its charter, namely, the following:

"It shall have power to take and receive on deposit, specially as bailee, any jewelry, plate, money, specie, securities, valuable papers, or other valuables of any kind, and, upon a consideration to be agreed upon by the parties, to guarantee the safe preservation and redelivery of the same; also the power to guarantee the payment of bonds and mortgages owned by other persons, or to guarantee titles to real estate for a consideration to be agreed on by the parties." Section 2099, Thompson's Shannon's Code.

Sections 2100, 2101, of Thompson's Shannon's Code, relied on by defendant, are attacked as unconstitutional; it being asserted that such legislation is arbitrary and unreasonable and discriminatory in favor of banks. We do not think this legislation is applicable to the case before us, and therefore have no occasion to pass, on the constitutionality of the enactment.

Nevertheless, as the constitutional question was fairly raised on the record, we retain jurisdiction of the case and will dispose of the other questions.

Plaintiff's proof tends to show that she was the daughter of a substantial farmer, who kept an account with defendant bank. She herself had a savings account at this bank. Some months before the robbery her father determined to give her $1,000. He so informed the president of the bank, and the latter drew a check to plaintiff's order, which the father signed and took to her.

The father testifies that the president of the bank asked him to have his daughter to do business with that institution. The father said that he could not interfere, and told the bank president that he must speak to plaintiff about the matter himself. It appears from the father's testimony that he and the bank president had previously had some conversation about the rate of interest the bank was paying on savings deposits, which was only three per cent., and the father insisted that he should have four per cent., for his savings. The bank president would not yield, and the matter was arranged by the father buying Liberty Bonds from the bank with his savings.

Plaintiff testifies that before she received the $1,000 check from her father the bank president called her up and told her he understood she was to receive this present and asked her if she would not buy a bond from him. She says that after some negotiation over the telephone she agreed to buy the bond and the bank president said he would take care of it for her. She states that when her father gave her the check she indorsed it and sent it back to the bank by her father, and that he paid $995 to the bank for a Victory Bond and brought her back $5.

The father testified further that at the suggestion of the president of the bank the daughter's bond was put in his (the father's) box by the bank official himself, and the box carried back by the latter into the vault.

It appears from the testimony of plaintiff that, although she understood the bond was to be placed in her father's box, she relied on the promise of the bank president to take care of her bond for her and his assurance that it would be safely kept. She was not familiar with the interior of the bank's premises.

Upon these facts we think the bank clearly became a bailee of the bond itself and not a mere bailee of the father's box. According to plaintiff's proof the president of the bank undertook to take care of the bond, and he himself selected the father's box as a receptacle for the bond.

The case, therefore, is entirely different from *Sawyer* v. *Old Lowell National Bank*, 230 Mass., 342, 119 N. E., 825, 1 A. L. R., 269, and that line of cases, holding that the acceptance of a box, chest, package, or envelope, does

144 Tenn.—13

not charge the depository as a bailee of the contents of such receptacle. As appears from the note to the case just mentioned (1 A. L. R., 272), there is a conflict of authority as to the liability of a bank under such circumstances. We do not get to this question in considering the propriety of the directed verdict below.

It is insisted for the plaintiff that the deposit of this bond with defendant bank, in view of the particular facts of this case, was a bailment for mutual benefit of the parties. The argument is quite forceful. Plaintiff's testimony, indeed, indicates that the promise of the bank's president to take care of the bond was part of the consideration for her purchase of this security from the bank.

We may concede, however, that the bailment was for the sole benefit of the plaintiff. Nevertheless, a mandatory is bound to use a degree of diligence and attention adequate to the performance of his undertaking. The degree of care required is essentially dependent upon the circumstances of each case. It is materially affected by the nature and value of the goods and their liability to loss or injury. That care and diligence which would be sufficient as to goods of small value or of slight temptation might be wholly unfit for goods of great value and very liable to loss and injury. _Jenkins_ v. _Motlow_, 33 Tenn. (1 Sneed), 248, 60 Am. Dec., 154; _Kirtland_ v. _Montgomery_, 31 Tenn. (1 Swan), 452; _Colyar_ v. _Taylor_, 41 Tenn. (1 Cold.), 373; _Mariner_ v. _Smith_, 52 Tenn. (5 Heisk.), 203; _Cicalla_ v. _Rossi_, 57 Tenn. (10 Heisk.), 67.

*Ridenour* v. *Woodward,* 132 Tenn., 620, 179 S. W., 148, 4 A. L. R., 1192, was a case of an alleged conversion by the bailee. The court held that not every parting of possession by the bailee of the thing intrusted to his care was a misappropriation, and suggested that the old cases went too far in this respect. It was repeated, however, that the care required of an accommodation bailee was ''to be measured . . . with reference to the nature of the thing placed in his possession.''

Plaintiff's bond was a coupon bond negotiable by delivery. She states that the president of the bank told her there was no necessity for registering the bond; that it would be safe at the bank. Plaintiff's proof tends to show that the bank was robbed at night; that there was no night policeman in the town of Mt. Pleasant, where the bank was located, and the bank had no burglar alarm nor night watchman, nor did it burn lights in its building at night. Mr. Pennington's tin box was placed in the vault along with other like boxes belonging to customers. The vault was an old one, built of brick, without steel lining. It had an iron or steel door. In the vault there were a nest of safety deposit boxes and two safes. Neither the safety deposit boxes nor the safes were disturbed by the burglars. Only the tin boxes were rifled. One of the safes was burglar proof. In this safe the bank kept its money and its own bonds and bonds belonging to relatives of some of its officers. There was not room in this safe to put tin boxes, but plenty of room to place plaintiff's bond and the bonds belonging to the bank's other patrons.

We think the evidence detailed and other proof appearing in the record entitled the plaintiff to have her case go to the jury. It should have been left to the jury to say, under all the circumstances, in view of the nature of plaintiff's property, whether the bank had exercised adequate care for the protection of said property.

We find no error in the rulings of the trial judge on evidence that are of consequence.

Usage and custom in a particular business reflect on the care exacted of a bailee. *Kelton* v. *Taylor,* 79 Tenn. (11 Lea), 264, 47 Am. Rep., 284; *Railway Co.* v. *Manchester Mills,* 88 Tenn., 653, 14 S. W., 314. We do not think it competent to prove, however, what one or two other banks may or may not have done toward safeguarding their valuables. Likewise we think the proof offered as to the business policy of the burglary insurance companies was incompetent. They are influenced by many reasons in determining what risks they will undertake. So, also, the advertisements of defendant bank were irrelevant, as plaintiff relied wholly on personal assurances from the bank president when she placed her bond there.

Reverse and remand for a new trial.