# MRS. CHARLES L. PEET v. THE ROTH HOTEL COMPANY.[1]

March 9, 1934.

No. 29,587.

[1]Reported in 253 N. W. 546.

152

*Sanborn, Graves & Andre,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondent.

*STONE, Justice.*

After an adverse verdict, defendant moved in the alternative for judgment notwithstanding or a new trial. That motion denied, defendant appeals.

The record is the story of a ring. Defendant operates the St. Paul Hotel in St. Paul. Mr. Ferdinand Hotz is a manufacturing jeweler. For 20 years or more he has visited St. Paul periodically on business, making his local headquarters at the St. Paul Hotel. He has long been one of its regular patrons, personally known to the management. Plaintiff's engagement ring, a platinum piece set with a large cabochon sapphire surrounded by diamonds, was made to order by Mr. Hotz. One of its small diamonds lost, plaintiff had arranged with him to have it replaced and for that purpose was to leave it for him at the St. Paul Hotel. November 17, 1931, he was a guest there on one of his seasonal visits. About four p. m. of that day plaintiff went to the cashier's desk of the hotel, wearing the ring. The cashier on duty was a Miss Edwards. At this point plaintiff may as well tell her own story, for upon it is based the jury's verdict. She thus testified:

"I had it [the ring] on my finger and took it off my finger. The cashier—I told the cashier that it was for Mr. Ferdinand Hotz. She took out an envelope and wrote 'Ferdinand Hotz.' I remember spelling it to her, and then I left. * * * I handed the ring to the cashier, and she wrote on the envelope. * * * The only instructions I remember are telling her that it was for Mr. Ferdinand Hotz, who was stopping at the hotel."

Plaintiff's best recollection is that Miss Edwards told her that Mr. Hotz was registered but was not in at the moment. Miss Edwards frankly admitted, as a witness, that the ring had been delivered to her. It is conceded that it was immediately lost, doubtless stolen, probably by an outsider. Miss Edwards herself is beyond suspicion. But the ring, where she placed it upon its delivery to her by plaintiff, was on her desk or counter and within easy reach of anyone standing or passing just outside her cashier's window.

The loss was not then reported either to plaintiff or Mr. Hotz. About a month later he was again in St. Paul, and then plaintiff was advised for the first time that her ring had never reached him. Upon inquiry at the hotel office, it was learned that it had been lost. The purpose of this action is to recover from defendant, as bailee of the ring, its reasonable value, fixed by the jury at $2,140.66. The reasonableness of that figure is not questioned.

■ The jury took the case under a charge that there was a bailment as a matter of law. Error is assigned upon the supposition that there was at least a question of fact whether the evidence showed the mutual assent prerequisite to the contract of bailment which is the *sine qua non* of plaintiff's case. The supporting argument is put upon the cases holding that where the presence or identity of the article claimed to have been bailed is concealed from the bailee he has not assented to assume that position with its attendant obligation, and so there is no bailment. Samples v. Geary (Mo. App.) 292 S. W. 1066 (fur piece concealed in coat checked in parcel room); U. S. v. Atlantic C. L. R. Co. 206 F. 190 (cut diamonds in mail package with nothing to indicate nature of contents); Riggs v. Bank of Camas Prairie, 34 Idaho, 176, 200 P. 118, Anno. 18

A. L. R. 83 (bailee of locked box supposed to contain only "papers and other valuables" not liable for money therein of which it had no knowledge).

The claim here is not that plaintiff perpetrated fraud upon defendant but that she failed to divulge the unusual value of her ring when she left it with Miss Edwards. The latter testified that at the moment she did not realize its value. Taking both facts and their implications as favorably as we may for defendant, the stubborn truth remains that plaintiff delivered and defendant accepted the ring with its identity and at least its outward character perfectly obvious.

The mutual assent necessary to a contract may be expressed as well by conduct as by words; or it may be manifested by both. Restatement, Contracts, § 21. The latter is the case here. The expression of mutual assent is found in what passed between plaintiff and Miss Edwards. The former delivered and the latter accepted the ring to be delivered to Mr. Hotz. Below that irreducible minimum the case cannot be lowered. No decision has been cited and probably none can be found where the bailee of an article of jewelry, undeceived as to its identity, was relieved of liability because of his own erroneous underestimate of its value.

If there was mistake with legal effect worth while to defendant, it must have been of such character as to show no mutual assent and so no contract. There was no such error here. Identity of the property and all its attributes, except only its value, were as well known to defendant as to plaintiff. The case is identical in principle with Wood v. Boynton, 64 Wis. 265, 25 N. W. 42, 54 Am. R. 610. There the plaintiff had sold to defendant, for one dollar, a stone which she supposed was at best a topaz. It turned out to be an uncut diamond worth $700. Neither its true character nor value were known to either buyer or seller at the time of the sale. There being neither fraud nor mistake as to identity, the mutual mistake as to value was held no obstacle to completion of the contract. Plaintiff was denied recovery.

■ The jury was instructed also that defendant was a "nongratuitous" bailee. By that it is doubtless intended to say that the

bailment was "reciprocally beneficial to both parties." 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 732. Clearly, that was a correct interpretation of the proof. The ring was accepted in the ordinary course of business by defendant in rendering a usual service for a guest, and so, plainly, it was for defendant's advantage, enough so, at least, to make the bailment as matter of law one for the benefit of both bailor and bailee.

■ The jury was charged also that the bailment, being for the reciprocal benefit of the parties, defendant as bailee was under duty of exercising, in respect to the subject matter, ordinary care, that is, the degree of care which an ordinarily prudent man would have exercised in the same or similar circumstances. The instruction was correct. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 732. The former distinction between bailments for the sole benefit of the bailor; those for the mutual benefit of both bailor and bailee; and those for the sole benefit of the latter, in respect to the degree of care required of the bailee in order to protect him from liability for negligence, has long since been pretty much discarded here as elsewhere. "It is evident that the so-called distinctions between slight, ordinary and gross negligence over which courts have perhaps somewhat quibbled for a hundred years, can furnish no assistance." Elon College v. Elon B. & T. Co. 182 N. C. 298, 303, 109 S. E. 6, 17 A. L. R. 1205.

Defendant's liability, if any, is for negligence. In that field generally the legal norm is a care commensurate to the hazard, i. e. the amount and kind of care that would be exercised by an ordinarily prudent person in the same or similar circumstances. The character and amount of risk go far, either to decrease or increase the degree of care required. The value of the property, its attractiveness to light-fingered gentry, and the ease or difficulty of its theft have much to say with triers of fact in determining whether there has been exercised a degree of care commensurate to the risk, whether the bailment be gratuitous or otherwise. However unsatisfactory it may be, until legal acumen has developed and formulated a more satisfactory criterion, that of ordinary care should be followed in every case without regard to former distinctions between slight,

ordinary, and great care. Even the courts which adhere to the former distinctions will be found in most cases to be demanding no other degree of care than one commensurate to the risk and other relevant circumstances; e. g. in Ridenour v. Woodward, 132 Tenn. 620, 179 S. W. 148, 149, 4 A. L. R. 1192, it was held that a gratuitous bailee was answerable only for his gross negligence or bad faith. But, as the court proceeded to say, the care to be taken was [132 Tenn. 623] "to be measured, however, with reference to the nature of the thing placed in his keeping." The defendant was relieved of liability because it was held as matter of law that he had [132 Tenn. 628] "acted with a fairly commensurate discretion" in handling the bailed property. See annotation of that case, "Propriety of distinction between degrees of negligence." 4 A. L. R. 1201.

As long ago as 1887, this court, speaking through Mr. Chief Justice Gilfillan, observed that "it is not easy, nor generally profitable, to define or point out the somewhat hazy distinction between these several degrees of diligence." Cannon River M. Assn. v. First Nat. Bank, 37 Minn. 394, 398, 34 N. W. 741, 742. "The doctrine that there are three degrees of negligence—slight, ordinary, and gross—does not prevail in this state." 4 Dunnell, Minn. Dig. (2 ed.) § 6971.

■ The rule of our decision law (Hoel v. Flour City F. & T. Co. 144 Minn. 280, 175 N. W. 300, following Rustad v. G. N. Ry. Co. 122 Minn. 453, 142 N. W. 727) puts upon the bailee the burden of proving that the loss did not result from his negligence. This burden, in the language of the late Mr. Justice Dibell [144 Minn. 281], is "not merely the burden of going forward with proofs, nor a shifting burden, but a burden of establishing before the jury that its negligence did not cause the loss." That proposition we adopted as "the practical working rule." We are not disposed to depart from it.

■ With the foregoing statement concerning the burden of proof, we go to an assignment of error questioning an instruction that "it makes no difference what care the defendant may have taken of its own property, that being its own concern, and the care it may give to its own property is of no importance in the determination of

this case." That instruction was given in connection with and in explanation of the rule concerning the due or ordinary care required of defendant.

Because the care required was that of the ordinary person in the same or similar circumstances, it is but obvious that, whatever defendant's care of its own property may have been, it would not alter the standard of care applicable to plaintiff's property in its hands as bailee. It may have been too much to say that defendant's care of its own property "is of no importance." There may be cases where the care of his own property exercised by a defendant bailee would have some relevancy as evidence. But if in that respect the charge went a bit too far, and was *pro tanto* error, no prejudice could have resulted to defendant, for no issue was made as to the *quantum* of care exercised by it, concerning its own property, if any, of a kind and value comparable to those of plaintiff's "cabochon sapphire."

■ Plaintiff was insured against the loss of her jewels by the St. Paul Fire & Marine Insurance Company. Fulfilling its policy obligation, it replaced the ring. This action was commenced April 15, 1932. April 28 plaintiff assigned her cause of action to her insurer. It is argued for defendant that plaintiff is not the real party in interest. That point was not made by answer, but was raised at the trial and overruled—with obvious propriety. Inasmuch as a judgment for the plaintiff, if satisfied, will be a bar in defendant's favor as against both plaintiff and her insurer, it cannot complain because, after the assignment of plaintiff's claim, the action was continued in her name.

2 Mason Minn. St. 1927, § 9165, is the "real party in interest" statute. But § 9176 provides that "no action shall abate by reason of the death or disability of a party, or the transfer of his interest, if the cause of action continues or survives. In such cases the court, on motion, may substitute the representative or successor in interest, or, in cases of transfer of interest, may allow the action to proceed in the name of the original party." Appellant's remedy was "by motion for substitution." American Engine Co. v. Crowley, 105 Minn. 233, 236, 117 N. W. 428, 430. None was made. See also

158

Dunnell, Minn. Pl. (2 ed.) §§ 38 and 125; Brown v. Kohout, 61 Minn. 113, 63 N. W. 248; Nichols v. C. St. P. M. & O. Ry. Co. 36 Minn. 452, 32 N. W. 176.

The decision in Chisholm v. Clitherall, 12 Minn. 251, 258 (375), when read in the light of subsequent cases, does not support the argument for defendant. Even there it was recognized that, while "the real party in interest must prosecute the action, * * * it may be continued in the name of the original party" (as this action has been) when the transfer of interest has taken place *pendente lite*.

Order affirmed.

