Opinion by
Head, J.,
It is not denied that in December, 1904, the plaintiffs and defendants entered into a contract, by the terms of which the former undertook to sell and deliver, f. o. b. cars Philadelphia, a carload of “new kegs” at the price of sixty-five cents per keg, and the latter in turn agreed to receive and pay for them. Nor that, in pursuance of that contract, a carload of kegs arrived in Philadelphia about January 26, the freight, however, not having been prepaid. Nor that the defendants paid the freight, unloaded the car and had the kegs hauled to their yards, where they were counted and inspected. By their letter of January 27 the defendants gave to the plaintiffs a detailed account of the results of this inspection; advised them that the kegs were not “new kegs” and could not be used as such, and that they would be held subject to plaintiffs’ orders. Of course this attitude, on the part of the defendants, could be justified only by their ability to establish, as a fact, that the kegs shipped were not the kegs bought, that is to say, “new kegs.” The plaintiffs then had two courses open to them, either one of which they could lawfully and logically pursue. If they chose to stand in affirmance of the proposition that the contract had been fully and fairly performed on their part, then the only thing remaining for them to do was to enforce the payment of the contract price, because on this theory the title to the kegs had passed to the defendants and the plaintiffs had no further interest in or right of control over their future disposition. Or if they did not choose to assume the burden that would thus be cast on them, the plaintiffs could acquiesce in the attitude of rescission adopted by the defendants, in which event the title to and right of control over the property would remain in them; the contract, as to that carload of kegs, would be at an end, and the defendants would owe *209 no part of the contract price. It would seem as if the plaintiffs, in effect at least, adopted the latter course, for a considerable correspondence ensued which apparently had for its object the ascertainment of the best price at which the kegs could be sold by the plaintiffs, either to the defendants or to some other party. This culminated in the letter from plaintiffs of March 22, in which they offer the kegs to defendants at fifty cents each, and in which they direct, in case that offer be refused, that the kegs be loaded on a car of the Pennsylvania Railroad Company, to whose agent shipping instructions would be furnished. To this defendants replied on March 24 declining to purchase, but agreeing they would ship, as directed, on Wednesday, March 29, unless meantime they received further instructions. They received no further orders, but did not ship the kegs as they had been directed and had agreed to do.
Meantime defendants prepared a statement of account charging plaintiffs with freight paid, haulage, storage, etc., and crediting them with the amount received from “ 100 kegs sent out as samples at 35c.” and showing a balance due defendants of $47.84. For this they drew a sight draft on plaintiffs and sent it, with statement attached, to a bank in Akron, Ohio, where the plaintiffs had their home office. Payment was refused and the draft was returned. No further communication passed between the parties and no change in the status occurred until April 26, 1905, when, as the result of a fire at defendants’ yards, the kegs were destroyed.
As this action was brought the plaintiffs rested their claim on the original contract and declared for the price of 544 kegs at 65c. each “sold and delivered pursuant to said contract and relying thereon.” At the trial, after the completion of the case in chief, the defendants moved for a compulsory nonsuit. Pending this motion, plaintiffs asked and obtained leave of the court to so amend their pleadings as to make their claim rest on the breach of the alleged contract created by their proposition of March 22, accepted in defendants’ letter of March 24. No question as to the propriety of allowing the amendment is raised by this record and we need not discuss it. The trial proceeded under the amended pleadings, and at its conclusion the learned court *210 below declared, as matter of law, that defendants were liable for their breach of their undertaking to reship the kegs as directed, and that the measure of damages (as we learn not from the charge itself, but from the uncontradicted statements in the appellants’ paper-book) would be the price demanded by plaintiffs in their proposition of March 22, viz.: fifty cents per keg. This conclusion was probably reached on the theory that the subsequent refusal of the defendants to carry out the proposition which they did accept, was tantamount, in law, to an acceptance of the alternative proposition which they had expressly rejected.
We are unable to assent to the soundness of the conclusion as to the measure of damages. The plaintiffs’ action sounds in contract. If they recover at all, under the present state of the pleadings, it must be for the breach of an obligation voluntarily undertaken, as a matter of contract, by the defendants. Their claim must rest on a failure to perform something the defendants had undertaken to do. Now the plaintiffs’ letter of March 22 advanced a specific offer to sell the kegs at fifty cents per keg. This offer was just as definitely rejected. There was then no contract, assented to by both parties, for a sale and purchase of the kegs. That offer then became as if never made. But the letter contained a second and alternative offer, to be considered after the rejection of the first. It was accepted and a contract was thus created. Performance of that contract imposed upon the defendants the single obligation to reship the kegs as directed. They failed to perform as' they agreed to do, and later exact performance became impossible by the destruction of the property. Had the plaintiffs received their kegs, they would have no cause to complain — the requirements of the contract, mutually assented to, would have been fully met. Under such circumstances, the nfarket value of the property, at the time it should have been shipped, would be compensation, and hence the measure of their recovery. This might be more or less than fifty cents per keg. The unaccepted offer to sell at that price did not conclude either party.
But, it is argued, the. defendants’ promise to ship was but voluntary, without consideration and, therefore, not binding. *211 We cannot think so. Even regarding them as bailees, the law imposed upon them the obligation' to dispose of the bailed property according to the instructions of the bailor, and this obligation was a sufficient consideration for the promise to perform it. Again, it is urged the bailee had a right of lien on the property for moneys expended on it at the instance or for the benefit of the bailor, and could rightfully retain possession until such moneys were paid. We may grant the existence of the principle as to' labor or money expended “at the request of the owner or under circumstances from which his assent can be reasonably implied:” Meyers & Bro. v. Bratespiece, 174 Pa. 119. It would follow from this that the bailed property could not be adversely taken from the bailee without paying, or offering to pay, such a claim, if he insisted on holding possession to secure his claim. But we can see nothing in the principle that would prevent a bailee from voluntarily surrendering the property, waiving his right to lien, and accepting the personal security of the bailor for his debt.
In the present case the defendants expressly agreed to ship the kegs as directed. They did not do so. They never notified plaintiffs they would not do so, or that they would continue to hold the property until their claim was paid. True, they drew a draft on plaintiffs which was returned unpaid. But it was not drawn until the very day the kegs should have been shipped. It was not accompanied with any notice that a lien on the kegs was claimed to secure payment and that possession would be retained until payment was made. Under these circumstances the defendants were not in a position to ask the court to say, as matter of law, that their default, in refusing to ship the kegs as they agreed to do, was condoned by the fact that there was some money due them, for freight, etc., for which, as bailees, they might have claimed a lien on the bailed property. The judgment must therefore be reversed so that the cause may be tried according to the principles herein indicated.
Judgment reversed and a venire facias de novo awarded.