# Light *v.* Miller, Appellant.

*Deeds—Description—Subject-matter—Evidence—Parol evidence.*

1. Where the subject-matter of a grant is insufficiently described in a deed, parol evidence may be given to show precisely what was intended to be conveyed, but this rule has no application when a subject-matter exists which satisfies the terms of the instrument of conveyance.

2. Where a contract for the sale of timber calls for two tracts, one larger than the other, and one of the parties claims that the two tracts were both embraced in the larger tract, but evidence in support of this contention is in conflict, not only with the contract of sale, but with all the essential facts in regard to the location and character of the smaller

tract, it is error for the court to permit the jury to find that both tracts called for in the deed were embraced in the boundaries of the larger tract.

*Bailment—Commodatum—Loan for use without pay—Degree of care—Negligence.*

3. A bailee is not an insurer, and in the absence of a special agreement he is not responsible for losses resulting from damages necessarily incident to the use of the bailed property, nor from inevitable accident or irresistible force. If the property is destroyed by fire it must be affirmatively shown that the fire was the result of some fault or neglect of the bailee to hold the latter for the loss.

Argued Oct. 29, 1908. Appeal, No. 145, Oct. T., 1908, by defendants, from judgment of C. P. Lebanon Co., March T., 1905, No. 163, on verdict for plaintiff in case of Daniel S. Light v. Levi F. Miller and Edwin Wolfe, trading as Miller & Wolfe. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a written contract. Before EHRGOOD, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $242.78. Defendant appealed.

*Errors assigned* were in the following form:

1. The court erred in refusing the defendants' fourth point, the point and answer of the court being as follows:

4. Under all the evidence in this case the verdict must be for the defendants. *Answer:* Fourth and fifth are refused, and we will not read them.

2. The court erred in refusing the defendants' second point, the point and answer of the court being as follows:

2. Under all the evidence in this case the defendants are not liable for the belt destroyed by fire. *Answer:* The second is refused, and we will not read it.

3. The court erred in refusing the defendants' fifth point, the point and answer of the court being as follows:

5. Under all the evidence in this case the verdict must be for the defendants for the sum of $130.50, with interest. *Answer:* Fourth and fifth are refused, and we will not read them.

410          LIGHT *v.* MILLER, Appellant.

Assignment of Errors—Opinion of the Court.    [38 Pa. Superior Ct.

. 4. The court erred in charging the jury as follows: " There was still fire there, still fire in the engine."

5. The court erred in charging the jury as follows: "If, on the other hand, you find that they were negligent at least in not remaining there a longer time than within quarter of an hour after they stopped, that they were negligent, then we say to you that there can be a recovery, and there should be a recovery in this case."

6. The court erred because, even if the court was justified in submitting the question of the $300 item to the jury, the charge to the jury was inadequate in that it failed to direct the attention of the jury to the possibility and legal effect of a mutual mistake of the parties as to the subject-matter of the contract.

*Robert L. Adams,* with him *Walter C. Graeff, Paul G. Adams* and *J. G. Adams,* for appellants, cited as to the descriptions: King v. Gas Coal Co., 204 Pa. 628; Thompson v. Kaufman, 9 Pa. Superior Ct. 305.

Cited as to the bailment: Zell v. Dunkle, 156 Pa. 353; Moyer v. R. R. Co., 31 Pa. Superior Ct. 559.

*H. Rank Bickel,* for appellee, cited: Hetherington v. Clark, 30 Pa. 393; Scott v. Sheakly, 3 Watts, 50; Todd v. Figley, 7 Watts, 542.

OPINION BY MORRISON, J., February 26, 1909:

On December 14, 1903, the plaintiff and defendants entered into a written agreement signed, sealed and delivered on that date. Portions of it material to be considered here are as follows: "The said Edwin Wolfe and Levi S. Miller, parties of the second part agrees to pay to Daniel S. Light, party of the first part the sum of $1,440 for the timber on tract No. one or lower tract, saw-mill, shingle mill, engine and boiler, the extra shaft the cord wood that is cut and logs that are cut, the shingle packer and all the tools that belong to said saw-mill, the above tract is situated in Bethel Township, Lebanon Co., Pa., and on the east and west side of Rattling Run. . . . The said Edwin

Wolfe and Levi S. Miller, parties of the second part agrees to pay said Daniel S. Light, party of the first part the sum of $300 for tract No. 2 lying south of tract No. 1 and lying on the east and west side of Rattling Run and situated in Bethel Township, Lebanon Co., Pa., and should the said second party be stopped from cutting wood or timber from said 2nd tract, then said article of agreement of tract No. 2 is void."

It was conceded at the trial that the defendants had paid the plaintiff the full consideration mentioned in the first paragraph of the contract above quoted. The main controversy in this suit was in regard to the $300 mentioned in the second paragraph. The real question in dispute was a claim on the part of the plaintiff that tracts Nos. 1 and 2 were both embraced in a tract known as the Horst tract shown by the evidence to contain about 117 acres. No question was raised as to the title of the plaintiff to the 117 acre lot. If the evidence warranted the court in permitting the jury to find in favor of the plaintiff's contention that both lots were embraced in the 117 acre tract, then the judgment ought to be affirmed as to the recovery of the $300. But the defendants contended at the trial lot No. 1 embraced the whole of the Horst tract and that lot No. 2 mentioned in the contract adjoined the Horst tract on the southerly side and that at the date of the contract it was understood by the parties to be a vacant strip of timbered land lying between the Horst tract and the Weidman estate lands; that the very reason for inserting in the contract of December 14, 1903, that, "should the said party be stopped from cutting wood or timber from said second tract, then said article of agreement of tract No. 2 is void," was because it was not believed that the plaintiff had the right to sell the timber on the said strip of land. At the trial there was no evidence that both tracts were embraced in the Horst lot, except that of the plaintiff. Against this there was the positive evidence of two or more witnesses; the fact that the Horst tract and the narrow strip of supposed vacant land south of the Horst answered the requirements of the contract precisely; that in the contract, No. 1 is described as the lower tract, lying on the east and west side of Rattling Run, a small stream

of water flowing down the mountain side; that tract No. 2 is described in the contract as being south of No. 1 and lying on the east and west side of Rattling Run, and the provision in the contract that should the parties of the second part be stopped from cutting timber on said tract No. 2, the agreement as to that tract was to be void. The evidence conclusively shows that the division of the tracts as made by the defendants fitted the description of the same as set forth in the contract. Rattling Run flows northwardly down the mountain side, cutting in two the Horst tract and the strip of vacant land lying south thereof. The division of the tracts as contended for by the plaintiff could not possibly fit the description of the tracts as contained in the contract, because, by the plaintiff's division, Rattling Run would not flow through lot No. 2 at all and it would not be correct to say that plaintiff's lot No. 2 lay south of lot No. 1.

The narrow strip of land which defendants contend is No. 2, was conveyed to Rufus Bohr by patent from the commonwealth of Pennsylvania, dated May 22, 1905, granted in pursuance of warrant dated May 3, 1905, and survey thereunder. The defendants were cutting timber on the land covered by this patent and they were stopped from such cutting by the grantee in the patent and for that reason they refused to pay the $300 for the timber on lot No. 2.

The testimony of Jerome Sholly and Edwin Wolfe strongly supports the contention that the tract of unseated or vacant land was tract No. 2, specified in the agreement. Again, the agreement recites that in consideration of the sum of $1,440 the defendants were to have "the timber on tract No. 1," and also "the cord wood that is cut and the logs that are cut" on tract No. 1. Yet the plaintiff testified that the cut portion of the Horst tract was to be tract No. 1 and the uncut portion tract No. 2. This testimony is flatly in conflict with the contract because it sells the timber on tract No. 1. If the timber was all cut on tract No. 1, it was folly to sell the timber thereon in the contract. Moreover, the contract sells "the cord wood that is cut and the logs that are cut," which are included with the timber, the timber seeming to have been made the principal

item in the sale of tract No. 1. In addition to all of this we call attention to exhibit "E," a draft of the Horst tract and adjoining land, and exhibit No. 2, made from survey of May 3, 1905, by D. W. Hain, both of which the record shows were offered and admitted in evidence, and are now before the writer of this opinion, although they are not printed in either of the paper-books as they should have been. We consider these exhibits as evidence supporting the defendants' contention that lot No. 2 was the vacant strip of land above referred to and that it was not a part of the Horst tract.

In Harvey v. Vandegrift, 89 Pa. 346, Mr. Justice PAXSON, for the Supreme Court, said: "It is undoubtedly true that where the subject-matter of a grant is insufficiently described in a deed, parol evidence may be given to show precisely what was intended to be conveyed. . . . But was there any such ambiguity in the case at hand to bring it within the rule above stated? The authorities are equally clear that the rule which allows extrinsic evidence to explain the extent of the subject sold, has no application when a subject-matter exists which satisfies the terms of the instrument of conveyance." See also King v. Gas Coal Co., 204 Pa. 628, where, on p. 633, it is said: "that when the description in a deed or devise is clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different."

We think the principle here involved is well stated in Thompson v. Kaufman, 9 Pa. Superior Ct. 305 (see p. 308): "When the direct purpose of the testator can be fulfilled from the terms of the will, and the subject of the devise existed at the time the will was executed and when it went into effect, no parol evidence is permissible, except the subject be doubtful, and then only to resolve the doubt."

From these cases, and many others of the same import which might be cited, we deduce the following rule as to the present case. Conceding that some parol testimony was required to apply the contract to the subject-matter which the parties had in mind at the time of its execution, to what extent can such parol evidence be admitted and where should the court draw

the line in construing the contract and submitting the case
to the jury? In our opinion, when the parol evidence showed
the location of the Horst tract and that it coincided with the
contract as to No. 1, and also that the vacant strip of land ly-
ing southerly of No. 1, between the latter and the Weidman
tract, answered the description of No. 2 tract, and that these
two tracts fill the requirements of the contract, in all essential
respects, as to tracts Nos. 1 and 2, and it appearing clearly
that a subdivision of the Horst tract into Nos. 1 and 2, based
on the plaintiff's testimony, was in conflict not only with the
contract, but with all the essential facts, in regard to the lo-
cation and character of the land called for, then it was error
for the learned court to permit the jury to find that both tracts
called for in the deed were embraced within the boundaries
of the Horst tract. We, therefore, hold that the court ought
to have withdrawn from the jury plaintiff's claim for $300 for
the timber on tract No. 2.

This brings us to the consideration of the other item of plain-
tiff's claim, to wit, a belt, loaned by him to the defendants, it
having been destroyed by fire which also destroyed defend-
ant's mill, lumber and machinery. In view of the fact that
the belt was loaned by the plaintiff to the defendants as de-
fined in some of the old authorities "commodatum," or loaned
for use without pay, and of the well-settled rule of law that in
such case the bailee is bound to exercise a high degree of care
of such property, the question of whether the defendants were
liable in the present case, under the undisputed facts, is not
without difficulty.

As to the care required on the part of the bailee, see Todd v.
Figley, 7 Watts, 542; First National Bank v. Graham, 79 Pa.
106. But a bailee is not an insurer and in the absence of a
special agreement, he is not responsible for losses resulting
from damages necessarily incident to the use of the bailed
property, nor from inevitable accident or irresistible force:
Story on Bailments, secs. 25–32, and see 3 Am. & Eng. Ency.
of Law (2d ed.), p. 747, and authorities there cited, in foot-
note 1.

In the present case we note that the mill and property where

the defendants used the belt, were sold to them by the plaintiff; that he loaned the belt for temporary use at that mill; that he must have known the custom of the defendants in operating the mill and the use to be made of the belt; that the defendants kept no watchman at the mill when it was not in use, and it is a matter of common knowledge that fires are likely to occur in and about a sawmill. An examination of the whole case on this point leads us to the conclusion that the learned court erred, in instructing the jury that there was evidence of want of care in the alleged fact that defendants' servants left the mill at about fifteen minutes of twelve o'clock on a certain day while "there was still fire there, still fire in the engine." An examination of the evidence does not sustain the court in instructing the jury that the men left the mill when there was still fire in the engine. The undisputed evidence shows that the mill was destroyed by a fire which occurred on the afternoon of the day referred to. E. M. Moyer, witness for plaintiff, testified that they left the mill at about a quarter to twelve o'clock. He testified as follows: "Q. You are engineer?" "A. Yes, sir." "Q. At the time of the fire this belt was on the engine?" "A. Yes, sir." "Q. There was some fire in the engine, just how much you do not know?" "A. There was very little fire there. I told you before we have stopped work at half past eleven o'clock." "Q. Left at quarter of twelve?" "A. Left quarter of twelve. I ran my fire down so that I had no fire in my fire box. Then I ran my water up to keep my water over Sunday. We only had one more day to saw; and that was on the following Monday." "Q. Mr. Wolfe testified he gave instructions that the fire should be oughtened?" "A. There was no fire there, and no instructions whatever, but I know that myself." "Q. He had not given any instructions?" "A. He had given instructions to be very careful, that there was no fire, but I know that myself with my experience."

Now, this proof was on the part of the plaintiff and we think it does not justify the learned court in saying to the jury that the defendants' men left fire at the mill at about noon from which, evidently, the jury found that the fire originated which

destroyed the mill at about four o'clock in the afternoon. Under all of the facts and circumstances in evidence it would be a mere guess of the jury as to how the fire originated. It may have been caused by boys or tramps who visited the mill several hours after it had been left in apparent safety; again, it may have been caused by some unavoidable accident, or cause, for which the defendants were in no way responsible. In our opinion, this item of the plaintiff's claim ought to have been withdrawn from the jury and as the record would then have stood the defendants were entitled to a certificate in their favor for the amount of their set off which they proved and which the plaintiff conceded that they were entitled to, to wit, $130.50, and interest thereon of $13.57. No motion was made in the court below, for judgment in favor of the defendants non obstante veredicto under the provisions of the Act of April 22, 1905, P. L. 286, and therefore, the judgment can only be reversed with a venire facias de novo.

The first, second, third, fourth and fifth assignments of error are sustained; the sixth is not sustained because we do not think the question therein was properly raised in the court below.

The judgment is reversed with a venire facias de novo.