Campbell & Setzer *v.* Clark & Melia, Inc. (et al., Appellant).

Argued September 29, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Daniel Marcu,* for appellant.

*Samuel Gorson,* for appellee.

OPINION BY HIRT, J., December 11, 1942:

In this action for damages for the conversion of a truck by defendant, Commercial Banking Corporation, the court entered judgment on the verdict for $1,432 in favor of Arlington Setzer, plaintiff. This defendant seeks a new trial.

On August 12, 1935, Jack J. Campbell entered into a lease agreement with Clark & Melia, Inc., the intent and purpose of which was the purchase of a truck, for a total consideration of $2,774, which included $352,

financing charges and the cost of fire, theft and collision insurance. The cost of the truck excluding the payment of financing and other charges, which did not add to its value, was $2,422. On November 13, 1935, the unpaid balance was $1,488, and on that date Campbell sold his interest in the truck to Setzer. A new lease then was entered into with Melia & Clark as lessor (in which Campbell was required to join as a lessee although he no longer had any interest in the truck) reciting $2,774 as the total rental with a credit of $1,286 (the amount paid by Campbell) and providing for payment of the above balance in monthly instalments. The lease was assigned on the same day by Clark & Melia to Commercial Banking Corporation which financed the transaction. Two days later Setzer made the November payment of $93 reducing the unpaid balance to $1,395. On December 2, 1935, the truck, while negligently operated by Setzer's driver, was wrecked in a collision and was removed to Clark & Melia's Garage. There was collision insurance in force at the time, for the benefit of both the finance company and Setzer. Because of the extensive and serious damage to the truck it was a question whether it was worth repairing. Clark & Melia estimated the cost of repair at about $2,100; another garageman offered to do the work for $1,312.11. Setzer attempted to get possession of the truck for repair by the latter but Clark & Melia refused to deliver it to him. Setzer, nevertheless, understood that the finance company had arranged with Clark & Melia to do the work and he testified that W. C. Atkinson, vice-president of the finance company, told him "you won't have to make any payments until it is repaired and on the road again; you go home and don't worry about that." He testified further, that, relying upon this waiver he did not make the payment of $93 when it became due on December 13, 1935. On December 21, 1935, the finance

company notified Setzer that it had repossessed the truck under its reservation of title in the lease because of Setzer's default in the payment due December 13. The truck never was repaired. After repossession, the finance company settled with the insurance company for $1,047.50 and credited this amount on Setzer's obligation. It sold the truck as junk for $250 and charged the remaining balance of $97.50, due it, to Clark & Melia. After notice of repossession, Setzer, on December 23, went to the office of the finance company and paid the December instalment of $93. He was given a receipt signed by a clerk in the employ of defendant. On the same day the finance company attempted to return the payment to Setzer by registered mail but delivery was refused by him.

The original statement of claim charged Clark & Melia and Commercial Banking Corporation with conspiracy to convert the truck. The amended statement charged the finance company alone with the conversion and by stipulation at the trial, the issue was restricted to Setzer's claim against the defendant, Commercial Banking Corporation. The effect of the stipulation was to eliminate plaintiff Campbell and Clark & Melia defendant, as parties to the action. There is no merit in the contention that there is a variance between the averments of the statement of claim and the proofs.

If the finance company, through its vice-president, waived payments on the lease, pending repair, it could not repossess the truck on December 21 because of Setzer's non-payment of the instalment due on December 13. It is conceded that Atkinson, defendant's vice-president, had the authority to bind the defendant by such waiver but Atkinson denied that he ever agreed to the postponement of payments until the repair of the truck was completed. If timely payment of the December 13 payment was waived, there was no forfeiture; this was an issue of fact for the jury. In this

connection the court properly charged: "The case practically turns on whether or not you believe that statement, because if Mr. Atkinson gave that assurance and made that statement to the plaintiff, then the plaintiff committed no default in not paying the $93 on December 13th. He had a right to rely on the word of Mr. Atkinson ......"

The difficulty is that we cannot assume that the jury imposed liability on the defendant on a finding that timely payment of the December 13 payment was waived. The jury may have resolved that issue of fact against Setzer but because of an erroneous, instruction that his payment of $93 on December 23, in any event, cured the breach, may have charged the defendant with conversion of the truck on that ground. The facts as they appear are that Setzer, one hour before defendant's office was open for business on December 23 induced Smith, an employee of defendant, to receive the payment on the plea that he was in a hurry and could not wait. Defendant's testimony is that Smith was alone in the office; the cashier had not arrived; that Smith was a discount clerk and accepted the money wholly as an accommodation to Setzer but that he was without authority to receive payments on behalf of the company or to bind it by any receipt given by him. The trial judge charged: "What about this payment of $93 on December 23, 1935? This payment was received by an employee of the company at the office of the company. True, Mr. Smith was not the Cashier, but the money was received by an employee in the office of the company, and a receipt given for it. In my opinion, that is just as effective as if it had been received by the President or the Vice-president or the Cashier. The fact that a tender was made to return the money would not change that status, the money was received and therefore the payment for December was made. I hold that that amounts to a waiver of

the right to have that payment made on December 13th, the date called for in the lease."

The circumstances as to this payment presented a question of fact for the jury and not one of law for the court. If the payment had been made or even tendered before the finance company had terminated the lease the breach would have been healed and the tenancy saved. *Valicenti v. Central Motors, Inc.,* 115 Pa. Superior Ct. 74, 174 A. 799. Acceptance of a payment after it becomes due, but before an affirmative act of forfeiture, is a waiver of the default, an affirmation of the contract and an election to treat the bailment as still existing. *Road Roller Co., v. Schlimme,* 220 Pa. 413, 417, 69 A. 867. But the defendant on December 21, had taken action in the matter and had notified Setzer that it had repossessed the truck. If the defendant was justified in declaring the lease forfeited because of the failure to pay the instalment of rent when it came due on December 13, it was not obliged to accept the payment of December 23 and to reinstate the lease after it had repossessed the truck under the forfeiture provision. A receipt generally is open to explanation *(Atkins v. Payne & Co.,* 190 Pa. 5, 42 A. 378) not only as to whether the money was actually paid but as to the authority of one who receives it to bind his principal. Waiver may be by anyone authorized by the principal. Whether there has been a waiver is generally an issue of fact, 27 R. C. L. Waiver, §7. The question has often arisen in the enforcement of insurance contracts where the law is well settled that the acceptance of all past due premiums, by the insurer, is evidence of a waiver, but the payments must be shown to have been received by one having authority to accept them. *Mackie, Appellant v. Prudential Ins. Co.,* 148 Pa. Superior Ct. 498, 25 A. 2d, 736. *Pyrich v. Scranton Life Ins. Co.,* 94 Pa. Superior Ct. 159; *Gaskill v. Pittsburgh L. & Tr. Co.,*

261 Pa. 546, 104 A. 775; *Murphy v. Prudential Ins. Co.,* 30 Pa. Superior Ct. 560. The same principle is applicable here and the instruction of the trial judge taking the question of Smith's authority to bind his employer, from the jury, is reversible error.

We think there is error also in the charge on the measure of Setzer's damage. The general rule of damage is the value of the thing converted at the time and place of the conversion. *Foley Exr. et al. v. Wasserman et al.,* 319 Pa. 420, 179 A. 595. And in general, as against a defendant having an interest in the property, recovery is limited to the value of the plaintiff's interest in the thing converted. 65 C. J. 132. A plaintiff can recover only to the extent of his own interest in the property. 26 R. C. L. Trover, §68. Where the intent of the parties is a sale, but for the protection of the seller the contract takes the form of a lease, on conversion of the property by the lessor, the value of the lessee's interest may be measured by, but cannot exceed, the total amount of 'rentals' paid. *Levan v. Wilten,* 135 Pa. 61, 19 A. 945. In *Smith v. J. I. Case Machine Co.,* 50 Pa. Superior Ct. 92, the jury were instructed: "In cases of this character the measure of damages is the amount of rental paid, subject to a deduction for the use of the machinery for the time that it remained in the possession of the lessee." In substance that was the instruction in the present case.

The amount paid to Campbell by Setzer for the truck was $1,286; this reimbursed Campbell for the total payments made by him. The November and December payments of $93, each, increased Setzer's investment in the truck to $1,472. The court instructed the jury that his loss was measured by what he paid, less the value of the use of the truck for 18 days. Under this instruction, the jury deducted $50 from the total paid by Setzer, and their verdict assessed his damage at $1,432. The error, we think, lies in the failure to

recognize the significance of the fact that the truck had been wrecked before the conversion. A different situation would have been presented if the subject of the conversion were a four-months-old truck in an undamaged condition. The verdict in effect charged the finance company with making good Setzer's whole damage.

The error consists in instructing the jury that the value of Setzer's interest in the truck was the same *after* it was damaged as it was before. On the other hand we cannot agree with the contention of defendant that the value of the thing converted was no more than a wrecked truck worth but $250. The lessee paid for collision insurance and it was procured by the defendant and was in force. The amount of the policy does not appear but for present purposes we may assume that it was adequate. (There is evidence that the insurance company offered to pay $1,400 which would have been sufficient for the repair of the truck under the low bid.) If there had been no conversion the insurance would have been available to Setzer for the repair of the truck. Under the contract, what the defendant converted was a wrecked truck and, as an incident, the proceeds of an insurance policy dedicated to its repair. In determining the value of Setzer's interest we must regard as done what would have been done but for the conversion. The basis of value is what the truck would have been worth if it had been repaired, by a proper application of the insurance money. Even plaintiff does not contend that the truck then would have been worth as much as before the collision. His witness testified that serious damage, though repaired, reduces the value of an automobile and that the truck in this case, if it had been repaired, would have been worth only 2/3 of its former value. From this reduced value, as may be determined on a retrial of this case, will be deducted the amount of

defendant's interest in the truck fixed by the contract of the parties at $1,302. Plaintiff will be limited in recovery to the difference between that value and the above amount of his remaining obligation to defendant under the lease. His damage over and above the amount thus chargeable to defendant must be borne by him.

Judgment reversed with a venire.