Berry et al. v. Heinel Motors, Inc., Appellant.

Argued October 6, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*S. I. Sacks,* with him *Sacks & Piwosky,* for appellant.

*Robert C. Duffy,* for appellees.

OPINION BY ROSS, J., January 8, 1948:

In this trespass action brought by tenants against their landlord for conversion of trade fixtures left on the leased premises after the expiration of the term, the jury returned a verdict for the plaintiffs. After the defendant's motions for judgment n. o. v. and new trial were refused by the court below, the defendant took this appeal only from the lower court's refusal of a new trial.

The plaintiffs conducted an automobile sales agency on premises at 4223 North Broad Street, Philadelphia, which were occupied by them under a four-year lease which expired on September 15, 1943. The defendant purchased the premises sometime during the plaintiffs' leasehold and at the expiration of the lease the plaintiffs quit the premises. Prior to the expiration of the lease, Arthur Berry, one of the plaintiffs, called upon Elmer W. Heinel, secretary and general manager of the defendant corporation, about an extension of time for removing certain trade fixtures and cars from the premises. Berry was informed by Heinel that the defendant did not plan on using the premises at once and that the plaintiffs had time to remove the fixtures and for this purpose the plaintiffs were permitted to retain the key to the premises. A few days after the expiration of the lease, when Berry went back to remove the fixtures, he found the lock on the door changed and was informed that whatever was left in the building belonged to the defendant. Upon defendant's further refusal to allow the plaintiffs to remove their trade fixtures, this action was brought.

Articles which are erected for business purposes by a tenant upon the leased premises are trade fixtures and constitute personal property even though physically annexed to the ground. *First National Bank of McAdoo v. Reese,* 356 Pa. 175, 51 A. 2d 806. The question whether particular structures or articles are removable as trade fixtures depends solely upon whether they are designated

for the purposes of trade, and this turns on the intention with which they were affixed to the realty, and not upon the character or mode of the physical annexation to the realty. *McClintock & I. Co. v. Aetna Explosives Co.,* 260 Pa. 191, 103 A. 622. As a general rule, an article may be regarded as a trade fixture if annexed for the purpose of aiding in the conduct by the tenant of a calling exercised on the leased premises for the purpose of pecuniary profit. To constitute any chattel that has been attached to the freehold a "trade fixture" it is only necessary that it be devoted to what is known as a trade purpose, and the form and size of the annexed chattel is immaterial. 36 C. J. S. 975. The Supreme Court, in *Donnelly v. Frick & Lindsay Co.,* 207 Pa. 597, 57 A. 60, at page 600, stated: "The presumption of the law, being in favor of trade, is that a tenant does not intend to make his trade fixtures part of the realty for the permanent benefit of his landlord, but will remove them before the end of his term; and it is only when he leaves without removing them during the term that an intention of making a gift of them to the landlord is to be imputed to him: *Hill v. Sewald,* 53 Pa. 271; *Watts v. Lehman,* 107 Pa. 106. If, during the term, no intention can be imputed to the tenant to make a gift to his landlord of fixtures, which he has attached to the land for the use of his business, and he has a right to remove them during the tenancy, the same rule ought to, and does, apply when, by permission of the landlord, even without a formal renewal or extension of the lease, he continues to remain on the premises for a definite or indefinite term. During such period, in the absence of any agreement to the contrary, his intention as to his fixtures remains unchanged, and his right to remove them is unaffected by his holding over."

The jury having found for the plaintiffs, the evidence must be read in the light most favorable to them and they are to be given the benefit of every fact and inference of fact reasonably deducible therefrom. Arthur

Berry testified that he talked with Elmer W. Heinel a few days before the expiration of the lease and explained that the plaintiffs had about sixty automobiles to move out of the building in addition to the trade fixtures and that it would be difficult because of shortage of labor to move out of the premises before the expiration of the date of the lease, and asked for a day or so additional time to remove their belongings, and that Heinel said, "Take your time getting out, don't rush, . . . Take all the time you want. We have a few months before we are going to do anything important". Berry testified that before the expiration of the lease September 15, 1943, all the automobiles had been removed but that there remained the plaintiffs' trade fixtures consisting of signs, office partitions, work benches, parts bins and a compressor; that two or three days later he went to remove these fixtures, was unable to get into the building and was told by Heinel, "Whatever you left in that building belongs to us", and that the defendant subsequently refused to deliver possession of the fixtures to the plaintiffs. Berry testified that all the fixtures were used in the plaintiffs' business and that they were owned by the plaintiff partnership, it having purchased part of them from a preceding tenant who also was engaged in the automobile business, and that the plaintiffs themselves installed the remainder of the items.

It must be assumed from the jury's verdict that the plaintiffs owned the fixtures involved in this action, that they were used in their business and that they were given an extension of time in which to remove them after the expiration of their lease. The evidence negatives any intention on the part of the plaintiffs to abandon their trade fixtures, and a lessee's right to chattels which he places upon demised premises in the proper enjoyment of his tenancy is not to be extinguished by implication. *339-41 Market Street Corp. v. Darling Stores Corp.*, 355 Pa. 312, 49 A. 2d 686. In *Lindsay Brothers Inc. v. Curtis Publishing Co.*, 236 Pa. 229, 84

A. 783, at page 234, the Supreme Court stated: "Nothing short of the clearest expression of an agreement of the parties . . . can justify the extension of the grasp of the landlord so as to cover chattels, or personal property brought upon the premises by the tenant in pursuance of the business for which the premises were leased."

The defendant complains of the admission in evidence of plaintiffs' Exhibit No. 2, which was objected to "because it was an offer, an attempt to make a settlement". The defendant's objection was overruled by the trial court and this ruling is assigned as error. Of course, an offer to compromise or settle a pending controversy is not an admission of liability and is not admissible in evidence against the party by whom it was made. *Duff v. Vogt*, 89 Pa. Superior Ct. 412; *McJunkin v. Kiner*, 157 Pa. Superior Ct. 578, 43 A. 2d 608.

The plaintiffs' exhibit was a letter dated February 7, 1944, from the *plaintiffs* to the *defendant* and read in part as follows: "We have your letter of February 2nd, and your check attached for $50.00 in payment of our property which you retain at 4223 N. Broad Street. This offer is not acceptable to us. Your check is herewith returned." Even if we assume that it was error to permit the introduction in evidence of this letter, it was harmless error when considered with other testimony in the case. Berry, *without objection,* testified in substance to the contents of the letters of February 2 and February 7, on cross examination of Elmer Heinel the plaintiffs' letter of February 7 was read to him and into the record *without objection* and he was examined relative to it, and the defendant itself introduced in evidence as its Exhibit No. 1 its letter of February 2, in which the offer of fifty dollars was made. Consequently, the exhibit added nothing to evidence already in the record and its admission did not harm the defendant.

The defendant contends further that the trial court allowed "the jury to guess as to values". There likewise is no merit in this complaint. Excluding the almost

worthless testimony of a witness, McClain, as to value of a compressor, the testimony would have sustained a verdict in an amount in excess of $1500.00—the verdict was for $1190.00—and the charge of the court as to the measure of damages and the function of the jury in arriving at its determination of the amount of the verdict was free from error. The measure of damages for conversion is the value of the property at the time and place of the conversion (*Campbell & Setzer v. Clark & Melia, Inc.*, 150 Pa. Superior Ct. 635, 29 A. 2d 350) and the court instructed the jury "to find the fair market value of the property at the time, and you can only base it on the testimony as given to you by the witnesses here in court. . . . It is the value at the time of the alleged conversion that should govern you, and you should take that all into consideration on the question of value. . . . on which you must use your own common sense, based on the evidence you have heard here."

The defendant finally contends that the court erred in the extent of cross examination it allowed and also that it was prevented from arguing a matter—clearly extraneous—to the jury. These are matters within the discretion of the trial court (*Thompson v. American Steel & Wire Co.*, 317 Pa. 7, 175 A. 541) and from a reading of the record we are not convinced that its discretion was abused.

Judgment affirmed.