AMERICAN ENKA COMPANY,
Appellant in No. 82–1080,

v.

WICACO MACHINE CORP.

AMERICAN ENKA COMPANY

v.

WICACO MACHINE CORP., Appellant
in No. 82–1109.

Nos. 82–1080, 82–1109.

United States Court of Appeals,
Third Circuit.

Argued Aug. 4, 1982.

Decided Aug. 16, 1982.

Patrick T. Ryan (argued), James S. Gkonos, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff-appellant/cross-appellee.

J. Stokes Adams, III (argued), Hepburn, Ross, Willcox & Putnam, Philadelphia, Pa., for defendant-appellee/cross-appellant.

Before ALDISERT and WEIS, Circuit Judges, and RE,* Chief Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question for decision in this diversity case tried non-jury under Pennsylvania law is whether, in the absence of agreement, goods lost by a bailee are valued at the time of bailment or at the time the bailor demands their return. The district court determined damages based on the value of the goods at the time of bailment and the bailor appeals. The bailee's cross-appeal requires us to decide as a threshold matter whether the district court erred in concluding that the bailment was for mutual benefit requiring the bailee to exercise ordinary care, rather than a gratuitous bailment requiring only slight care. Finally we must decide whether the district court erred in refusing to award damages for delay, sometimes called "pre-judgment interest." We reverse the court's damage award and remand on the issue of pre-judgment interest.

### I.

The present controversy arises out of the bailor's aborted plan to build a rayon manufacturing plant in Tennessee. American Enka Company, plaintiff below, employed Chemtex, Inc., as its agent to build the plant and Chemtex, in turn, engaged Wicaco Machine Corporation, defendant below, to fabricate spinnerette housings and clusters for use in the plant. Because the spinnerettes are immersed in acid during rayon manufacturing, they are constructed of hastelloy, a special alloy comprised of nickel, chromium, molybdenum, and carbon. In October 1974, at Chemtex's directions, Wicaco purchased and took delivery of 6,000 pounds of hastelloy for $23,250.00, and billed Chemtex for that amount. Chemtex paid Wicaco and Enka in turn reimbursed Chemtex. The parties agree that this transaction created a bailor-bailee relationship between Enka and Wicaco respectively.

Declining demand for rayon caused Enka to suspend the project for six months in November 1974, but Wicaco agreed to store the hastelloy ingots in its plant until the project resumed, in return for immediate payment of services and materials it already had provided under the agreement. In March 1975, Enka informed Chemtex that the Tennessee project would be cancelled; Wicaco was not notified. One year later the board of directors of Akzona, Inc., Enka's parent company, formally cancelled the construction project and apparently Wicaco learned of the cancellation at about the same time.

Even though it knew that the Tennessee project had been cancelled, in April 1977, Wicaco agreed to hold the hastelloy for a while longer at no additional charge. In the meantime and until early 1979 Enka tried to find a use for the hastelloy but was unsuccessful. Those efforts included collaboration between Enka and Chemtex to design a spinnerette cluster for use on equipment in existing Enka facilities. In June 1977, Enka requested a quotation from Wicaco for forty spinnerettes, but Wicaco's bid was rejected because it was too high. Finally, on January 17, 1979, Chemtex demanded that Wicaco return the hastelloy to Enka; Wicaco responded that it was unable to locate the ingots, and they are still unaccounted for.

Enka sued Wicaco demanding damages of $52,800, the market price of hastelloy at the time of the 1979 demand, more than double the price paid in 1974. After hearing the evidence non-jury, the district court determined that the bailment was for the mutual benefit of Enka and Wicaco and held that Wicaco had breached its duty of care in storing the ingots. The court awarded only $23,250 in damages, however, on the theory that Wicaco could only be held liable to the extent of the risk it agreed to undertake when the bailment was created. Pursuant to Pa.R.Civ.P. 238, the court awarded "pre-

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

judgment interest" from the date of the complaint to the date of judgment, but refused Enka's request for common law pre-judgment interest for the period between the demand and the complaint because it did not find that the defendant engaged in the type of misconduct warranting additional damages for delay.

Enka appeals, arguing that the basis of the award should be the value on the date of demand and that it is entitled to pre-judgment interest from that date; Wicaco cross-appeals, contending that the bailment was for the sole benefit of the bailor and that under the reduced standard of care for such bailments it is not liable.

## II.

■ A bailment is a delivery or deposit of personalty under an implied or express agreement that at the termination of the bailment the personalty will be redelivered to the bailor, otherwise dealt with according to the bailor's directions, or kept until the bailor reclaims it. *Wright v. Sterling Land Co.*, 157 Pa.Super. 625, 627, 43 A.2d 614, 615 (1945). Although the bailor-bailee relationship has its origins in contract, liability is based on the tort concept of negligence. Thus ordinarily a bailee is not an insurer of the property absent an express agreement, *Light v. Miller*, 38 Pa.Super. 408, 414 (1909), and will be held liable for loss of or damage to the bailed property only upon proof of a departure from the appropriate standard of care, *id.* Recognizing the superior position of the bailee to account for the goods, the courts cast on the bailee the burden of coming forward with evidence of due care once the bailor has demonstrated delivery to the bailee and failure to return or return of the goods with damage. *E. I. duPont de Nemours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 357, 236 A.2d 555, 557 (1967).

The standard of care imposed on the bailee under Pennsylvania law is determined by the classification of the bailment, whether for mutual benefit of the bailee and bailor, for the sole benefit of the bailor (a gratuitous bailment), or for the sole benefit of the bailee. *First National Bank of*

*Carlisle v. Graham*, 79 Pa. 106, 116 (1875). If the bailment is for the bailor's sole benefit, Pennsylvania law requires only slight diligence on the part of the bailee and correspondingly imposes liability only for gross neglect. *E. I. duPont de Nemours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. at 356, 236 A.2d at 557. If for the sole benefit of the bailee, the bailee is liable for damage caused by slight negligence. *First National Bank of Carlisle*, 79 Pa. at 116. A bailment for the mutual benefit of bailor and bailee requires the bailee to exercise reasonable and ordinary care. *Fidelman-Danziger, Inc. v. Statler Management, Inc.*, 390 Pa. 420, 136 A.2d 119, 123 (1957); *Kleckner v. Hotel Strand*, 60 Pa.Super. 617 (1915).

## III.

The dispute in this case is whether the facts establish a bailment for mutual benefit or one for the sole benefit of Enka. Wicaco argues that although the bailment began as one for mutual benefit because of its expectation of profit in making the spinnerettes, once Enka notified it that the Tennessee project was cancelled, Wicaco's agreement to continue holding the ingots without charge converted the bailment to one for the sole benefit of the bailor. Accordingly, it contends that it can be held liable only for gross neglect.

■ Classification of a bailment as one for mutual benefit does not require the bailor to demonstrate a specific, tangible benefit or compensation running to the bailee. Pennsylvania's appellate courts have said that "a possibility or chance of expected profit to accrue" from the bailment is sufficient to make the relationship one for mutual benefit. *Kleckner*, 60 Pa. Super. at 620. *See also Woodruff v. Painter & Eldridge*, 150 Pa. 91, 24 A. 621 (1892). The specific question presented for review is whether, as the district court found, Wicaco retained a realistic expectation of profit from the bailment relationship after the Tennessee project was cancelled. Because the nature of the relationship in this case turns on the objective expectations of the bailee, it is a question of fact, and our

review of the district court's decision is limited by Fed.R.Civ.P. 52(a), the clearly erroneous rule. *See Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 104 (3d Cir. 1981).

We conclude that the district court's findings were supported by the evidence and we reject Wicaco's argument because it ignores the business realities of Wicaco's relationship with Enka. As evidenced by the testimony of Wicaco president Donald F. Palmer, Wicaco expected either that the Tennessee project would be revived or that it would receive future orders from Enka and Chemtex, or Chemtex alone, allowing use of the bailed hastelloy. Indeed, in June 1977 Enka solicited a Wicaco bid for the manufacture of spinnerettes for use in existing Enka plants. Because Wicaco is in the business of manufacturing mill equipment, not the storage of metal alloys, an expectation of future orders would be sufficient to make the bailment one for mutual benefit. We therefore conclude that the district court's finding that the bailment was for mutual benefit was not clearly erroneous. Because Wicaco does not contend in its cross-appeal that the district court erred in holding that it breached the duty of ordinary care, we turn to Enka's appeal challenging the amount of damages and the refusal to award common law pre-judgment interest.

### IV.

The appropriate measure of damages is not always free from doubt. Lord Holt in *Serrer v. Beale*, 1 Lord Raym. 692 (1707), stated that "[e]veryone should recover damages in proportion to the prejudice which he hath sustained." E. Re, Cases and Materials on Remedies 756 (1982). Although the district court awarded judgment to Enka it refused to impose liability for more than the value of the ingots on the date of delivery. Relying on *Fidelman-Danziger, Inc. v. Statler Management, Inc.*, 390 Pa. 420, 136 A.2d 119 (1957), the court reasoned that Wicaco assumed the risk of loss of hastelloy at the price when delivered and that in the absence of proof that Enka

informed it of an increase in value, Wicaco could be held liable for no more.

We conclude that the district court's reliance on *Fidelman-Danziger* is misplaced. In that case, the Pennsylvania Supreme Court held that a hotel could not be held liable for the value of diamonds contained in a suitcase checked at a hotel checkroom when the bailor failed to inform the bailee of the extraordinary value of the case's contents. The court reasoned that in the absence of notice of the bailed property's unusual value, the hotel would not be expected to exercise the ordinary care consonant with its possession of an extremely valuable item. The court relied on a series of cases holding bailees of automobiles not liable for loss of items concealed in them, all of which turned on the bailee's lack of notice of the existence of the lost item. *Mee v. Sley System Garages, Inc.*, 124 Pa. Super. 230, 188 A. 626 (1936); *Moss v. Jannetti Body Co.*, 101 Pa.Super. 1 (1930). *See also Hunter v. Reed's Sons*, 12 Pa.Super. 112 (1899) (bailor should have given notice of diamond ring in pocket of bailed trousers so bailee could take precautions or decline the bailment).

Although no Pennsylvania appellate decision disclosed by the parties or in our own research controls our disposition, we conclude that the present case is more clearly analogous to *Peet v. Roth Hotel Co.*, 191 Minn. 151, 253 N.W. 546 (1934), and we believe that the Pennsylvania Supreme Court would adopt its analysis. In *Roth Hotel*, a hotel guest left a diamond ring with the desk clerk, directing her to deliver it to a certain person. The ring was lost and the hotel defended the suit brought by the bailor on the ground that it was not informed of the value of the ring. In rejecting this defense the Minnesota Supreme Court observed:

The claim here is, not that plaintiff perpetrated fraud upon defendant, but that she failed to divulge the unusual value of her ring when she left it with Miss Edwards. The latter testified that, at the moment, she did not realize its value. Taking both facts and their impli-

cations as favorably as we may for defendant, the stubborn truth remains that plaintiff delivered and defendant accepted the ring with its identity and at least its outward character perfectly obvious.

The [plaintiff] delivered and the [defendant] accepted the ring to be delivered to Mr. Hotz. Below that irreducible minimum, the case cannot be lowered.

. . . . .

If there was mistake with legal effect worth while to defendant, it must have been of such character as to show no mutual assent and so no contract. There was no such error here. Identity of the property and all its attributes, except only its value were as well known to defendant as to plaintiff.

191 Minn. at 154, 253 N.W. at 547.

Unlike *Fidelman-Danziger* and the cases on which it relied, *Roth Hotel* and the present case do not involve items of value concealed in the bailed item. Here the bailment was of 6,000 pounds of hastelloy and therefore the agreement was for the return of 6,000 pounds of hastelloy. The nature of the bailed goods was apparent to the bailee and gave notice of their value; moreover, the bailee was an experienced manufacturer of specialized machinery parts and can be charged with knowledge of the change of metal alloy market conditions during the course of the bailment, in contrast to the hotel in *Fidelman* that could not be charged with knowing the value of contents of a closed case. *Cf. Samples v. Geary*, 292 S.W. 1066 (Mo.App.1927) (bailee of coat checked in parcel room not liable for concealed fur piece). Although it is not necessary to our decision, there is evidence that Wicaco knew or should have known of the increased value of the hastelloy. Accordingly it is liable for its value on the date of Enka's loss.[1] *See generally I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d

657, 431 N.Y.S.2d 372, 409 N.E.2d 657 (1980); *Proctor & Gamble Distr. Co. v. Lawrence American Field Warehousing Corp.*, 16 N.Y.2d 344, 350–352, 266 N.Y.S.2d 785, 789–791, 213 N.E.2d 873, 876–77 (1965).

On at least one occasion a Pennsylvania appellate court has concluded that the time of demand is the appropriate time for determining the date of loss and thus for measuring damages in a bailment. *Luntz v. Berry*, 35 Pa.Super. 204 (1908); *see also J. E. Faltin Motor Trans., Inc. v. Eazor Express, Inc.*, 172 F.Supp. 175, 179 (W.D.Pa. 1959), *aff'd*, 273 F.2d 444 (3d Cir. 1960) (value calculated at time of destruction of bailed property). We believe that the date of demand is the appropriate day for the calculation of the loss in this case because that is the earliest date on which Enka realized that it had suffered damage and the earliest date on which it would have been in a position to mitigate its damages. To accept Wicaco's argument would be to deny Enka a complete remedy. *See also Berry v. Heinel Motors, Inc.*, 162 Pa.Super. 52, 58, 56 A.2d 374, 377 (1948); *Campbell & Setzer v. Clark & Melia, Inc.*, 150 Pa.Super. 635, 641, 29 A.2d 350, 353 (1942) (damages for conversion are calculated as of the time of conversion). We believe that the Pennsylvania Supreme Court would reach the same conclusion if confronted with the present facts. The rule we apply today is also rooted in the practical realization that a contrary rule might tempt bailees of commodities increasing in value to convert the bailed goods. A bailee unwilling to risk increased liability, on the other hand, would be in the best position to insure against loss or limit its liability through agreement with the bailor. *See Proctor & Gamble Distr. Co.*, 16 N.Y.2d at 353, 266 N.Y.S.2d at 791, 213 N.E.2d at 877.

Accordingly, we conclude that the court erred in assessing damages on the basis of

---

1. Wicaco's reliance on *Boys Novelty Suit Co. v. Garfield*, 76 Pa.Super. 365 (1921), is also misplaced. That case involved a dispute over the value of goods at the time of bailment and bound the bailor to its own memorandum of value. The documents Wicaco points out as analogous in the present case were clearly in-

tended only to identify the bailed goods, not to indicate agreement on value. Moreover, that case did not involve a fluctuation in value of the bailed goods and, unlike *Boys Novelty Suit*, there has never been a disagreement in this case about the value of the hastelloy.

the value at the time of bailment instead of the value at the time of the demand, January 17, 1979.

## V.

A tort plaintiff in Pennsylvania has potentially two distinct sources of compensation for delay, often referred to in shorthand fashion as "pre-judgment interest." First, Pa.R.Civ.P. 238 provides that a plaintiff who recovers for personal injury, death, or property damage is entitled to interest at the rate of 10 per cent from the date of the complaint.[2] *See Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed*, —— U.S. ——, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). In *Jarvis v. Johnson*, 668 F.2d 740 (3d Cir. 1982), we held that Rule 238 applies in diversity cases. By its terms, Rule 238 seems to be mandatory. *Hayden v. Scott Aviation, Inc.*, 684 F.2d 270, 271 (3d Cir. 1982). Here the district court concluded that Rule 238 applied and awarded 10 per cent interest on $23,250 from the date of the complaint.

■ The second source derives from an extension of the common law rule that allowed damages for delay in contract actions involving liquidated sums, true "pre-judgment interest." Common law pre-judgment interest is based on the principle of compensation and the understanding that a plaintiff wrongfully deprived of a sum of money is not made whole unless the delay in recovery is accounted for. Pre-judgment interest in Pennsylvania contract cases is a matter of right and is calculated from the time the money becomes due or payable. *Pen-*

neys v. Pennsylvania R. R. Co.*, 408 Pa. 276, 183 A.2d 544 (1962); *Oxford Mfg. Co. v. Cliff House Bldg. Corp.*, 224 Pa.Super. 387, 307 A.2d 343 (1973). *See also Eazor Express, Inc. v. Teamsters*, 520 F.2d 951, 973 (3d Cir. 1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976); Restatement of Contracts § 337(a).

■ Pre-judgment interest, by name, is not awarded in Pennsylvania actions other than contract, but what is described as damages for delay may be awarded in other actions, including certain tort actions. Thus in these cases, Pennsylvania employs a charming legal fiction, in the true ancient Roman *ficto, fictiones*, sense [3] and although disavowing pre-judgment interest by name allows a contract pre-judgment interest counterpart "where not only the principle on which the recovery to be had is compensation, but where, also, the compensation can be measured by market value or other definite standards." *Richards v. Citizens Natural Gas Co.*, 130 Pa. 37, 40, 18 A. 600, 600 (1889). *See also Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 74–75, 263 A.2d 336, 338 (1970). In these instances, usually involving conversion or destruction of property,[4] Pennsylvania courts have emphasized that time may be an important factor and "the plaintiff will not be fully compensated unless he receive not only the value of his property, but receive it, as nearly as may be as of the date of his loss." *Citizens Natural Gas*, 130 Pa. at 40, 18 A. at 600.

> Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but

---

**2.** Rule 238 provides in pertinent part:

> [I]n an action seeking monetary relief for bodily injury, death or property damage, ... the court ... shall
> (1) add to the amount of compensatory damages ... in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;
> (2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action,

whichever is later, up to the date of the award, verdict or decision.

**3.** *See* H. Maine, Ancient Law 25–26 (1861). A legal fiction conceals or tends to conceal the fact that a rule of law has undergone alteration, its letter remaining unchanged, its operation being modified.

**4.** When the claim is for personal injuries, damages for delay are not recoverable because damages are assessed as of the date of trial. *Conover v. Bloom*, 269 Pa. 548, 112 A. 752 (1921).

compensation for the delay, of which the rate of interest affords the fair legal measure....

....

[T]he allowance of compensation for delay depends on the circumstances and must therefore be determined by the jury.

*Id.* Common law damages for delay, whether true pre-judgment interest or not, are awarded at the statutory rate (presently 6 per cent, Pa.Stat.Ann. tit. 41, § 202) from the date the cause of action arose.[5] Thus it is clear that in Pennsylvania common law damages for delay are recoverable in tort actions when the amount is liquidated or capable of mathematical ascertainment, but unlike contract pre-judgment interest where the award of such interest is mandatory, the granting of delay damages in tort cases is discretionary with the fact-finder after considering all the circumstances. Although there are no Pennsylvania cases on point it also seems to us that there can be no duplication of common law damages for delay and Rule 238 damages for the period between the filing of the complaint and the judgment. To review the district court's award of delay damages here, we must determine whether the district court misused its exercise of discretion.

█ The parties do not contend that the dispute was over an unliquidated sum; rather, the dispute was over two liquidated amounts determined by the market value of hastelloy on the relevant dates: $23,250 or $52,800. A debt is considered liquidated when it is capable of ascertainment with mathematical precision, or as stated in *Citizens' Natural Gas,* "by market value or other definite standards," and a dispute between two amounts so ascertained does not alter its liquidated character. *Cf. Oxford Manuf. Co.,* 224 Pa.Super. at 390, 307 A.2d at 345; Restatement of Contracts § 337(a) (bona fide dispute over liability or amount of damages in contract action does not defeat right to pre-judgment interest).

█ Enka claims instead that the district court's limited pre-judgment interest award did not make it whole and that therefore the district court abused its discretion. It supports its claim by pointing out that the price of hastelloy continued to rise between the date of demand and the date of the complaint, a fact that underscores the inadequacy of the district court's denial of damages for delay.

Although Enka's argument has force, we are bound by Pennsylvania law and its allocation of broad discretion in the fact-finder after considering all the circumstances; Enka implicitly admits that it cannot claim common law damages for delay as a matter of right. Here, the district court applied the correct legal standard and plainly considered all the circumstances in rejecting Enka's claim:

In consideration of the record and under all the circumstances, the Court does not believe that plaintiff is entitled to additional delay damages from the time of the loss to the time that the action was commenced inasmuch as by reason of the Court's findings it cannot be said that the delay was caused by the type of conduct that in the Court's view would support the imposition of additional damages.

District court order denying plaintiff's motion for amendment of judgment and findings (Jan. 4, 1982), app. at 308 (citing *Marrazzo*).

Nevertheless, we will remand this issue to the district court for reconsideration in light of our holding that the court erred in its assessment of damages. We do so because it is apparent to us that one of the factors the court may have considered in denying common law damages for delay is what it perceived as an excessive demand by Enka for the value of the hastelloy on the date of demand. *See Marrazzo; Pierce v. Lehigh Valley Coal Co.,* 232 Pa. 170, 81 A. 142 (1911) (jury may consider plaintiff's ex-

---

**5.** In *Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir. 1981), this court suggested that Pennsylvania trial courts have discretion to award damages for "wrongful detention" of money—yet a third type of damage for delay— in excess of the statutory rate, based on the equitable theory of disgorging unjust enrichment. This is not a case of wrongful detention of money and Enka does not contend that Wicaco has been unjustly enriched.

cessive demand as a factor in denying damages for delay). A remand will allow the district court to reevaluate all the circumstances in light of our holding on damages. *See Marrazzo*, 438 Pa. at 77, 338 A.2d at 338 (remand for findings of fact and conclusions of law required when record did not reveal legal standard applied or circumstances considered by trial court in denying damages for delay); *Wade v. S. J. Groves & Sons Co.*, 283 Pa.Super. 464, 478, 424 A.2d 902, 909 (1981) (remand to trial court for assessment of responsibility for delay and statement of circumstances considered in decision).

### VI.

The judgment of the district court will be reversed and the proceedings remanded with a direction that the district court enter judgment in favor of the appellant Enka in the amount of $52,800 plus interest under rule 238, and for further proceedings consistent with this opinion on the issue of common law damages for delay from the date of demand to the filing of the complaint.